2023 IL App (1st) 221360

FIRST DIVISION
December 18, 2023

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-22-1360

|  |  |  |
|---|---|---|
| | ) | |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 6010301 |
| | ) | |
| MARLON MADISON, | ) | Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justices Lavin and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1    The petitioner, Marlon Madison, appeals from the circuit court's second stage dismissal of his *pro se* petition for postconviction relief. See 725 ILCS 5/122-1 *et seq.* (West 2018). On appeal, the petitioner solely challenges his postconviction counsel's performance. He argues that postconviction counsel provided him with unreasonable assistance in violation of Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) by failing to respond to the State's motion to dismiss and to amend his *pro se* petition to address its procedural defects. The petitioner further asserts that because postconviction counsel essentially acquiesced to the State's arguments at the dismissal hearing, counsel was not permitted to stand on his *pro se* petition, but rather had a duty to

withdraw. For the following reasons, we reverse and remand with instructions.

¶ 2                                    I. BACKGROUND

¶ 3      The record before us reveals the following relevant facts and procedural history. In April 2016, the petitioner was charged with armed robbery (720 ILCS 5/18-2(a)(2) (West 2016)) and aggravated unlawful restraint (*id.* § 10-3.1). The petitioner proceeded with a bench trial at which the following relevant evidence was adduced.

¶ 4      The victim, David Carter, testified that at about 5 p.m. on April 17, 2016, he was selling loose cigarettes from his car near an alley at 111 North Kedzie Avenue. Carter had approximately $600 in bills and coins in his pockets and in his car, along with his wallet and cell phone. As Carter was standing outside of his car, a vehicle pulled up across the street and the petitioner and another individual exited and approached him. Carter identified the petitioner in open court but stated that he could not identify the second assailant. He acknowledged that he had never previously met either man.

¶ 5      According to Carter, after the two men approached him, the unknown assailant brandished a revolver and asked Carter "[Y]ou know what this is?" Carter was familiar with weapons and therefore "let them proceed." The petitioner went through Carter's pockets and took Carter's money, his cell phone, and his wallet. Carter saw the petitioner place the stolen items into his own pockets. The petitioner then took a crowbar from Carter's trunk, pried open the glove compartment, and took about $90 in single bills from inside. While this was happening, a friend of Carter's approached from a nearby vehicle, and the petitioner and the unknown assailant told him to "get on about [his] business."

¶ 6      The petitioner and the unknown assailant then instructed Carter to walk to the middle of the alley while they returned to their own vehicle. At that point, Carter saw a white police vehicle

2

driving by and hailed it. Pointing to the two men, Carter told the police that they had just robbed him. The police chased the petitioner's vehicle. Carter later accompanied the police to a nearby alley, where he identified the petitioner as one of the men who had robbed him. Later that night, after visiting the police station, Carter was able to retrieve his cell phone and his money.

¶ 7     At trial, the State played video footage from a surveillance camera that captured the interactions in the alley and the initial pursuit of the petitioner's vehicle by the police. Carter narrated the events as they occurred.[1]

¶ 8     On cross-examination, Carter confirmed that the surveillance video depicted a group of individuals walking up to the area around Carter's car and picking up objects off the ground while the two men were robbing him. Carter denied knowing what they were picking up. He also denied that he threw money on the ground or that he saw the petitioner and the unknown assailant do the same.

¶ 9     On cross-examination, Carter further acknowledged that the police later informed him that there were some counterfeit bills among the cash that was recovered from his glove compartment. He claimed, however, that he did not know where the counterfeit money came from.

¶ 10    Chicago police officer Michael Hudson next testified that at about 5 p.m. on April 17, 2016, together with his partner Officer Gabriel Barrera, he was on patrol, when he received a robbery-in-progress call near 111 North Kedzie Avenue. Officer Barrera was driving, and Officer Hudson was in the passenger seat. When they arrived, Officer Hudson saw a vehicle with two occupants driving away from the scene, with the petitioner in the driver's seat. With their emergency lights activated, the officers pursued the vehicle.

¶ 11    At one point, the vehicle turned into an alley, and Officer Hudson lost sight of it for about

---

[1]The surveillance video is not part of the record on appeal.

three to five seconds. When the police eventually caught the vehicle, it was stopped in the alley, and the petitioner was climbing over a fence. Officer Hudson chased the petitioner on foot. As he did so, he observed the petitioner deliberately reaching into his pants pockets and dropping cash and coins onto the ground. Officer Hudson eventually apprehended the petitioner and recovered $537.97 from his person. Eventually, several additional officers arrived on the scene with Carter, and Carter identified the petitioner as one of the men who had robbed him. Officer Hudson acknowledged that he never saw where the other occupant of the vehicle went.

¶ 12    After the State rested, the petitioner presented no evidence in his defense.

¶ 13    Following closing arguments, the circuit court found that the State had failed to prove beyond a reasonable doubt that a gun was used during the incident. Accordingly, the court acquitted the petitioner of armed robbery but found him guilty of the lesser included offense of robbery. The court also found the petitioner guilty of aggravated unlawful restraint but merged that count into the robbery conviction.

¶ 14    The petitioner subsequently filed a *pro se* motion requesting a hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). In it, he asserted that his trial counsel provided him with ineffective assistance by failing, *inter alia*, (1) to investigate and interview two occurrence witnesses (Ms. Hattie and Ricky Davis) who would have corroborated that several people were picking up money off the ground and contradicted Carter's version of events, (2) to conduct a pretrial investigation including visiting the scene, (3) to impeach Carter regarding his testimony that the police returned to him all the money taken from him, (4) to object to the State asking that the petitioner be found guilty of robbery, and (5) to present "exculpatory evidence" that was in counsel's possession.

¶ 15    After an inquiry into the petitioner's allegations, in the presence of defense counsel, the

4

circuit court denied the petitioner's motion for a *Krankel* hearing.

¶ 16     At the petitioner's request, new counsel was appointed for posttrial proceedings. Posttrial counsel filed a motion for a new trial, asserting that the circuit court had failed to assess the credibility of the State's witnesses and that the State had failed to prove beyond a reasonable doubt that a threat of force had occurred. The circuit court denied the posttrial motion and subsequently sentenced the petitioner, who was mandatory Class X by background, to 18 years' imprisonment.

¶ 17     The petitioner filed his appeal on March 29, 2019.[2] On appeal, he argued that the circuit court did not make an adequate inquiry into his *pro se* claims of ineffective assistance of trial counsel and that posttrial counsel's assertion that she would not advance any of the petitioner's *pro se* claims was not an adequate substitute for a preliminary *Krankel* inquiry. *People v. Madison*, 2019 IL App (1st) 180888-U. On appeal, this court rejected the petitioner's argument and affirmed his conviction and sentence. *Id.*

¶ 18     A month after his appeal was filed, on April 29, 2019, the petitioner filed the instant *pro se* postconviction petition, which began with the petitioner's assertion that a direct appeal had not been filed in his case and concluded with a "Notice" that claims about the *Krankel* hearing and *Krankel* issues "are raised on direct appeal and preserved herein, for future review, if necessary." The *pro se* petition then alleged (1) actual innocence based on newly discovered evidence in the form of an exculpatory affidavit from Ronald Adams; (2) a *Brady v. Maryland*, 373 U.S. 83 (1963), violation on the basis of the State's failure to disclose Adam's exculpatory statement to the police

---

[2]The record reveals that after defense counsel's motion to reconsider the sentence was denied, counsel filed a notice of appeal. Subsequently, on May 15, 2018, the petitioner filed a *pro se* motion to reduce his sentence. On August 10, 2018, the circuit court denied the petitioner's motion. On November 19, 2018, the petitioner filed *pro se* motion to leave to file a late notice of appeal. On December 3, 2018, this court granted his late notice of appeal and in January appointed the Officer of the State Appellate Defender to represent him.

and to turn over money, a cell phone, a credit card, and video to the defense; and (3) ineffective assistance of trial counsel for failing to, *inter alia*, investigate two (unnamed) occurrence witnesses and the location of video cameras that captured the whole incident and to preserve issues for direct appeal. The petitioner also reasserted all of his *Krankel* claims.

¶ 19    The *pro se* petition did not include a verification affidavit or a statement confirming that the allegations were brought truthfully and in good faith.

¶ 20    In support of the petitioner's claims, the petition attached affidavits from Adams and himself. In his affidavit, Adams averred that at around 1 p.m. on April 17, 2016, he saw Carter standing next to the open trunk of his car in the parking lot of a liquor store near 111 North Kedzie Avenue. Adams saw another man walk up to Carter and confront him, shouting accusations that Carter had sold him some bad drugs and demanding his money back. Carter and the man then grabbed each other and wrestled, causing money to blow around in the wind. Adams attested that the petitioner walked over to the back of the car where the two men were wrestling, picked something up off the ground and walked away. Afterwards, a police car arrived and chased the petitioner. Adams attested that he spoke to the police and told them that he had witnessed the entire incident and that no weapons were involved.

¶ 21    Similarly, in his affidavit, the petitioner attested that around 1 p.m. on April 17, 2016, near 111 North Kedzie Avenue, he saw money and other items on the ground near two men who were arguing about some drugs. The petitioner saw other men picking up money from the ground and rushed in to pick up as much money and items as he could, intending to return it. When he saw a police car pull up, he panicked, realizing that some of what he had taken "could be connected to drug sales." The petitioner ran, jumped over a fence, and dropped the money and items. The petitioner attested that once he was seized by the police, he made an honest statement to them. The

petitioner also averred that he informed his defense counsel of the location and name of an eyewitness to the incident. Finally, he attested that he is actually innocent but "could not have produced this info[rmation] sooner with due diligence."

¶ 22    Because the petitioner's direct appeal was still pending before this court, the *pro se* petition was docketed on May 13, 2019, and postconviction counsel, Tiffin Price, from the public defender's office, was appointed to represent him.

¶ 23    On December 19, 2019, the mandate was issued in the direct appeal. On January 27, 2020, postconviction counsel appeared before the circuit court. For the next three years, some of which included the COVID-19 pandemic shutdown, the case was repeatedly continued, with postconviction counsel often not appearing before the circuit court. More than a year and a half after the issuance of the mandate, on July 16, 2020, postconviction counsel appeared at a videoconference status hearing, waived the petitioner's appearance, and informed the court that "it has been difficult to interview witnesses," but that the petitioner has indicated that there are "two witnesses." On November 23, 2020, again by way of videoconference, postconviction counsel requested another continuance, explaining that she had not been to her office and had therefore not received the petitioner's letters and needed additional time to "try to contact him." She also informed the court that her "investigators can't go out to interview anybody." Another six months later, at the January 28, 2021, videoconference, postconviction counsel stated that she had "contacted two of the witnesses. Seem to be playing phone tag."

¶ 24    Four months later, on April 28, 2021, postconviction counsel filed a Rule 651(c) certificate, attesting that she had consulted with the petitioner "personally or by letter" to ascertain his contentions of deprivations of his constitutional rights. Counsel further attested that she analyzed the direct appeal record and decision, reviewed the court file, and obtained and examined the

transcript of the trial and sentencing proceedings. She averred, however, that she was unable to review the trial file of private counsel. In addition, counsel attested that she had spoken to the witnesses the petitioner identified, but that she did not receive any new information. Counsel therefore attested that she did not amend the *pro se* petition as the petition adequately set forth the petitioner's claims.

¶ 25    On February 27, 2022, the State filed a motion to dismiss. In it, the State argued, *inter alia*, that the petitioner's *Krankel* claims were barred by *res judicata* and that his claims regarding ineffective assistance of trial counsel for failure to investigate and interview two occurrence witnesses and locate additional video footage of the incident were forfeited. The State further argued that the ineffective assistance, *Brady*, and actual innocence claims were substantively meritless. In that vein, among other things, the State pointed out that the petitioner could not rely on Adams's affidavit for both his actual innocence and a *Brady* (or ineffective assistance of counsel) claims. Finally, the Sate argued that the petitioner's failure to attach a verification affidavit to his *pro se* petition was a fatal procedural defect requiring dismissal.

¶ 26    Postconviction counsel did not file a response to the State's motion to dismiss.

¶ 27    On August 29, 2022, at the motion to dismiss hearing, the State began by arguing that the petitioner's claims were barred by *res judicata* and forfeiture and that the lack of a verification affidavit was fatal to his petition. The following colloquy then occurred:

> "THE COURT: Stop there. Are you aware of this allegation that's (compromised audio feed) [*sic*] filed an affidavit?
>
> [POSTCONVICTION COUNSEL]: No, your Honor, I'm not.
>
> THE COURT: Well, didn't you read their motion to dismiss?
>
> [POSTCONVICTION COUNSEL]: I read their motion to dismiss, your

Honor, and I guess my response to them—to this argument and your question

is, in reviewing and talking with my client and investigating—I don't know if

this answers your question. But the allegations contained and the witnesses

that you suggested were not contacted. I, in fact, attempted to do so. I spoke

to them. I received no support or merit to the allegations that [the petitioner]

filed. So I did not file. I just filed a 651C. I rest on that motion.

   THE COURT: Okay.

   [POSTCONVICTION COUNSEL]: I have no argument against [the

State's] motion to dismiss."

The State then proceeded to argue its motion to dismiss at length. At the conclusion of the State's

argument, the circuit court asked postconviction counsel whether she had anything to add, to

which postconviction counsel responded, "No. I do not. I rest on my pleadings."

¶ 28  The circuit court then stated: "Given the responses to my questions, the State's motion to

dismiss is hereby granted." The petitioner now appeals.

¶ 29            II. ANALYSIS

¶ 30  On appeal, the petitioner solely contends that he was denied his right to reasonable

assistance of postconviction counsel in violation of Illinois Supreme Court Rule 651(c) (eff. July

1, 2017). For the following reasons, we agree.

¶ 31  At the outset, we note that the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1

*et seq.* (West 2018)) provides a three-stage process by which criminal defendants can challenge

their convictions on the basis of a substantial denial of federal or state constitutional rights. See

*People v. Cotto*, 2016 IL 119006, ¶ 26; *People v. Tate*, 2012 IL 112214, ¶ 8; *People v. Hodges*,

234 Ill. 2d 1, 9 (2009); *People v. Peeples*, 205 Ill. 2d 480, 509 (2002); *People v. Johnson*, 2017 IL

9

120310, ¶ 14. At the first stage of the proceedings, within the first 90 days, the circuit court must independently review the petition and determine whether the allegations therein, taken as true, demonstrate a constitutional violation or whether they are frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018); *Cotto*, 2016 IL 119006, ¶ 26; *Tate*, 2012 IL 112214, ¶ 9.

¶ 32    If, as here, the circuit court does not dismiss the petition as frivolous or patently without merit within the first 90 days, the petition automatically advances to the second stage, where it is docketed for additional consideration. 725 ILCS 122-2.1(b) (West 2018); *People v. Brooks*, 221 Ill. 2d 381, 389 (2006). At the second stage, the circuit court will appoint an attorney for the petitioner if he cannot afford one, and the State is entitled to file responsive pleadings. *Id.* §§ 122-2.1(a)(2), (b), 122-4, 122-5; *Cotto*, 2016 IL 119006, ¶ 27; *Tate*, 2012 IL 112214, ¶ 10.

¶ 33    During the second stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. 725 ILCS 5/122-6 (West 2018); *Tate*, 2012 IL 112214, ¶ 10. In doing so, the court must not engage in fact-finding or credibility determinations but must take as true all well-pleaded facts that are not positively rebutted by the original trial record. *People v. Domagala*, 2013 IL 113688, ¶ 35. If the circuit court determines that the petitioner made a substantial showing of a constitutional violation, the petition proceeds to the third stage for an evidentiary hearing. *Id.* ¶ 34. Conversely, where no substantial showing is made, the petition is dismissed. *Id.* ¶ 35.

¶ 34    The right to counsel in postconviction proceedings is statutory and petitioners are entitled only to a "reasonable" level of assistance. See *Cotto*, 2016 IL 119006, ¶¶ 29-30; *People v. Hardin*, 217 Ill. 2d 289, 299 (2005) (appointment of counsel in postconviction proceedings is "a matter of legislative grace" and not a constitutionally guaranteed right). However, "unless proper representation is afforded, the appointment of an attorney is but an empty formality." *People v.*

*Garrison*, 43 Ill. 2d 121, 123 (1969). To ensure a reasonable level of assistance, certain duties are prescribed to postconviction counsel by Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). Under that rule, postconviction counsel must (1) consult with the petitioner (by mail or in person) to ascertain his contentions of constitutional deprivations, (2) examine the record of the trial proceedings, and (3) make any amendments to the *pro se* petition necessary for an adequate representation of the petitioner's contentions. *Id.*; *Cotto*, 2016 IL 119006, ¶ 27; *People v. Perkins*, 229 Ill. 2d 34, 42 (2007).

¶ 35     The filing of a Rule 651(c) certificate creates a rebuttable presumption that postconviction counsel provided reasonable assistance. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. Where a certificate is filed, the petitioner bears the burden of overcoming this presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by the rule. *Id.* We review whether postconviction counsel provided reasonable assistance *de novo*. *Id.* ¶ 17.

¶ 36     In the present case, on appeal, the petitioner acknowledges that postconviction counsel filed a Rule 651(c) certificate. He nonetheless asserts that the record rebuts the presumption that counsel acted reasonably. The petitioner points out that counsel failed to amend his *pro se* petition to adequately state his claims and to file a response to the State's motion to dismiss, which was necessary to avoid procedural default. In addition, he contends that counsel essentially conceded the State's arguments at the hearing on the motion to dismiss and failed to withdraw and allow the petitioner to advance his claims on his own or through new counsel. The petitioner therefore seeks remand for a new second-stage proceeding with the appointment of competent counsel.

¶ 37     In response, the State argues that the petitioner has failed to rebut the presumption of reasonable representation created by postconviction counsel's filing of the Rule 651(c) certificate. The State refers to multiple instances in the record where postconviction counsel referred to her

efforts to investigate the petitioner's claims, including reviewing the record, communicating with the petitioner to ascertain his contentions, and interviewing the witnesses whose names the petitioner provided.

¶ 38    To the extent that the record supports postconviction counsel's statements regarding her investigation of the petitioner's claims and her review of the record, we agree with the State. In that respect, the record reveals that once postconviction counsel was appointed, the transcript and records from the petitioner's trial were released to the Officer of the State Appellate Defender. Subsequently, postconviction counsel informed the court that she had either communicated with or needed more time to communicate with the petitioner in an attempt to locate and speak to the two occurrence witnesses he had named. Counsel ultimately informed the court that she had contacted those witnesses and spoken to them. As such, the record supports counsel's statements that she consulted with the petitioner and conducted a review of the records available to her.

¶ 39    Nonetheless, for the following reasons, we find that the presumption of substantial compliance is rebutted by counsel's failure to amend the *pro se* petition to adequately state the petitioner's contentions. Specifically, we find that counsel's failure to amend the petition to include a verification affidavit, which was necessary to avoid second-stage dismissal on procedural grounds, constituted unreasonable assistance.

¶ 40    Our supreme court has repeatedly held that the duty to adequately and properly present the petitioner's substantive claims "necessarily includes attempting to overcome procedural bars *** that will result in dismissal of a petition if not rebutted." *Perkins*, 229 Ill. 2d at 44; see *People v. Turner*, 187 Ill. 2d 406, 414 (1999); *People v. Johnson*, 154 Ill. 2d 227, 243 (1993). Postconviction counsel must meet these procedural requirements in order to adequately present a constitutional claim under the Act. See *Turner*, 187 Ill. 2d at 414 (compliance with Rule 651(c) requires counsel

to make "routine amendment[s]" that will overcome procedural bars to the petition); *Johnson*, 154 Ill. 2d at 246; *Perkins*, 229 Ill. 2d at 44.

¶ 41 Section 122-1(b) of the Act provides that "[t]he proceeding shall be commenced by filing with the clerk of the court in which the conviction took place a petition (together with a copy thereof) verified by affidavit." 725 ILCS 5/122-1(b) (West 2018). "[L]ike all pleading verifications," the purpose of the verification affidavit pursuant to section 122-1 is to "confirm[ ] that the allegations are brought truthfully and in good faith." *People v. Collins*, 202 Ill. 2d 59, 67 (2002).

¶ 42 Our supreme court has made clear that the lack of a verification affidavit is a procedural defect that "is properly the subject of a motion to dismiss at the second stage of [postconviction] proceedings." *People v. Hommerson*, 2014 IL 115638, ¶ 14; see *People v. Turner*, 2012 IL App (2d) 100819, ¶ 36 ("noncompliance with section 122-1(b)" is "an alternative [procedural] basis for [second-stage] dismissal of the petition"); *People v. Nitz*, 2011 IL App (2d) 100031, ¶ 19 (same); *People v. Cage*, 2013 IL App (2d) 111264, ¶ 13 (the failure to provide a verification affidavit is a "nonjurisdictional procedural defect" and a proper basis for second-stage dismissal); *People v. Henderson*, 2011 IL App (1st) 090923, ¶ 35 (noting that "[a]t the second stage, the State will have the opportunity to object to the lack of" a valid verification affidavit, and that "appointed [postconviction] counsel can assist in arranging" for its preparation).

¶ 43 Consequently, postconviction counsel acts unreasonably when she fails to amend a *pro se* petition to provide a proper verification affidavit. See, *e.g.*, *Nitz*, 2011 IL App (2d) 100031, ¶ 19 (holding that postconviction counsel provided unreasonable assistance by failing to amend the petition to include a properly notarized verification affidavit); *Cage*, 2013 IL App (2d) 111264, ¶ 13 (holding that failure to provide a verification affidavit is a "nonjurisdictional procedural defect

that should have been remedied by [the petitioner's postconviction] counsel at the second stage");

*People v. Watson*, 43 Ill. 2d 108, 110 (1969) (holding that postconviction counsel's failure to amend a *pro se* petition to include a verification affidavit constituted unreasonable assistance).

¶ 44    In the present case, the record affirmatively shows that the circuit court dismissed the *pro se* petition because the petition did not include a verification affidavit. In its motion to dismiss, the State explicitly argued that the failure to attach a verification affidavit was reason for dismissal. The State made this same argument at the hearing on the motion to dismiss, to which the circuit court responded by immediately asking postconviction counsel if she was aware of this deficiency. Postconviction counsel first admitted that she was not. Upon the circuit court's questioning as to whether she had read the State's motion to dismiss, postconviction counsel then backtracked and stated that she had read the State's motion but that because her investigation of the two witnesses named by the petitioner revealed no merit to the petitioner's claims, she had no objection to the State's motion and was resting on the *pro se* petition and her Rule 651(c) certificate. The circuit court then granted the State's motion, noting that it was doing so on the basis of the concessions made by postconviction counsel. Accordingly, the record here clearly rebuts the presumption of reasonable assistance created by postconviction counsel's filing of the Rule 651(c) certificate.

¶ 45    The State nonetheless asserts that counsel was not required to amend the petition to overcome this procedural bar by hypothesizing that doing so may have required counsel to violate her ethical duties. In support, the State points out that the *pro se* petition inconsistently states first that "no direct appeal has been filed" in the petitioners' case, but subsequently that the *Krankel* issues and claims have been raised on direct appeal. The State then posits that this inconsistency in the petition somehow demonstrates why postconviction counsel would not have wanted to

amend the petition to include a verification affidavit.

¶ 46    At the outset, we note that the State's proposed justification for counsel's failure to include a verification affidavit is not supported by the record. At the hearing on the State's motion to dismiss, postconviction counsel admitted to the circuit court that she was not even aware that the *pro se* petition was not verified and therefore facially deficient.

¶ 47    What is more, even if we were to accept the State's proposed justification for counsel's failure to include a verification affidavit, we find that any inconsistency in the *pro se* petition only further supports the conclusion that counsel acted unreasonably by failing to make amendments, which were clearly necessary for an adequate presentation of the petitioner's contentions. See *Johnson*, 154 Ill. 2d at 243; *Turner*, 187 Ill. 2d at 412. Counsel must have known that failure to attach the verification affidavit itself was fatal to the petition. Accordingly, if she believed that certain discrepancies in the petition would have prevented her from ethically allowing the petition to be verified, it was her duty to amend the petition to avoid them altogether. In the present case, if we accept the State's hypothesis, counsel could have accomplished this by simply crossing off one sentence in the *pro se* petition, which incorrectly noted that an appeal had not been filed in the petitioner's case. Counsel's failure to do so constitutes unreasonable representation.

¶ 48    The State next asserts that regardless of whether we find that postconviction counsel failed to comply with Rule 651(c), because the petitioner's claims have no merit, any deficiency in counsel's representation was necessarily harmless. Contrary to the State's position, however, our supreme court has recently held that "harmless error analysis does not apply where compliance with Rule 651(c) is not shown and that such compliance must be shown regardless of whether the claims made in the petition are viable." *People v. Addison*, 2023 IL 127119, ¶ 35; see *People v. Suarez*, 224 Ill. 2d 37, 47 (2007) (holding that when postconviction counsel fails to fulfill her

duties under Rule 651(c), remand is required "regardless of whether the claims raised in the petition had merit"; explaining that the "purpose" underlying the rule "is not merely formal," but "to ensure that all indigents are provided proper representation when presenting claims of constitutional deprivation" (internal quotation marks omitted)).

¶ 49    Accordingly, since we find that the record rebuts the presumption that counsel complied with Rule 651(c) by failing to amend the *pro se* petition to include a verification affidavit, we remand to the circuit court for the appointment of new postconviction counsel.

¶ 50    As such, we need not address the parties' additional dispute over whether, after choosing not to amend the *pro se* petition, counsel had a duty to withdraw or whether she could merely stand on the allegations in the *pro se* petition and inform the court of the reason the petition was not amended. See *People v. Huff*, 2022 IL App (1st) 201278-U, *appeal allowed*, No. 128492 (Ill. Sept. 28, 2022) (this issue is currently pending before our supreme court).

¶ 51                                III. CONCLUSION

¶ 52    For these reasons, we reverse the circuit court's dismissal of the *pro se* petition and remand for the appointment of new postconviction counsel and further proceedings under the Act.

¶ 53    Reversed and remanded with directions.

*People v. Madison*, 2023 IL App (1st) 221360

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-CR-60103(01); the Hon. Joseph M. Claps, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Jennifer L. Bontrager, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Brenda K. Gibbs, and Sharon Kim, Assistant State's Attorneys, of counsel), for the People. |