2024 IL App (1st) 230680-U

No. 1-23-0680

Order filed June 10, 2024

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 91 CR 17056 (02) |
| | ) | |
| GILBERT TAYLOR, | ) | Honorable |
| | ) | Domenica A. Stephenson, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1   *Held*: Circuit court's second-stage dismissal of defendant's postconviction petition reversed where defendant made a substantial showing of actual innocence.

¶ 2   Defendant Gilbert Taylor appeals from the second-stage dismissal of his petition filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). On appeal, defendant contends that the circuit court erred in dismissing his postconviction petition

where he made a substantial showing of actual innocence. We reverse and remand for third stage proceedings.

¶ 3     Defendant was charged with first-degree murder, attempted first-degree murder, and other offenses in connection with a gang-related shooting that occurred on June 22, 1991. Defendant was tried simultaneously but separately from Lavell Jackson and Tyree Anderson. A third individual, Clark Brown, pled guilty prior to defendant's trial and testified on behalf of the State.

¶ 4     Following a bench trial, defendant was found guilty of the first-degree murder of Ruashee Black (720 ILCS 5/9-1(a) (West 1990)) and two counts of attempted first-degree murder of Anthony Cook and Michael Cook (720 ILCS 5/8-4(a), 9-1(a)(1) (West 1990)).[1] The court imposed an aggregate sentence of 61 years in prison. We affirmed on direct appeal. *People v. Jackson et al.*, Nos. 1-94-3357, 1-94-3365 and 1-94-3949 (consolidated) (1996) (unpublished order under Supreme Court Rule 23). We only recount the facts necessary to resolve the issues on appeal.

¶ 5     At trial, Kenneth Savage testified that on the day of the shooting he was at a residence near 78th and Seeley conversing with Black, "little Michael," Anthony, Travar, Rovan, Stacey, Tanisha, Diedra, Tron, and Rocky.[2] At approximately 9 p.m., Savage saw a blue Chevy drive past on Seeley three times with three men inside. When the car passed the second time, he recognized "Clyde Brown" sitting on the passenger side. "Marcus and Scottie" came on the porch, Savage told them to leave, and they "walked off." Savage then heard 15 to 20 gunshots from two firearms from the gangway next to the house. Savage "jumped up" and attempted to run but was shot in the forearm.

---

[1] Since Michael Cook and Anthony Cook share the same last name, we will refer to them by their first names.

[2] Travar's, Rovan's, Stacey's, Tanisha's, Diedra's, Tron's, and Rocky's last names were not included in the record on appeal.

He continued to run toward his home when Anthony "came running out of nowhere holding his head." Anthony was "skinned in the head."

¶ 6    On cross-examination, Savage stated that he did not know defendant personally. Savage would see defendant around the neighborhood but not "on Seeley."

¶ 7    Michael testified that he was on 78th and Seeley sitting on a porch with Savage, Tron, Rovan, Diedra, Tanisha, and Black. At approximately 9 p.m., Michael heard gunshots coming from the side of the residence. He attempted to run inside, but he was shot in both of his legs. After the shooting, Michael noticed Black was shot and was laying on the steps.

¶ 8    Angela Jackson, Black's mother, testified that on the night of the shooting, she received a phone call from her sister that Black had been shot. When she arrived at the hospital, she was directed to see the chaplain.

¶ 9    Cassandra Robinson testified that on the day of the shooting, she was at her mother's residence on 78th and Seeley. At approximately 9 p.m., she heard "[a] series of gunshots." She looked out of the window that faced Seeley and saw two individuals carrying firearms and walking on "[her] mother's gangway to go through the alley." She stated that she could not identify them in court because the incident occurred three years ago. The individuals were two or three feet from the window, and she saw their faces. She then looked out of the rear kitchen window, which faced the backyard, and saw the two individuals running to the alley. Robinson then went to the porch and found Black "in a puddle of blood laying on the front porch." The following day, she identified two individuals in a line-up as the individuals she saw walking through the gangway. She then identified People's Exhibit 9, a photograph of Brown, and People's Exhibit 10, a photograph of Anderson, as the two individuals she saw walking through the gangway.

¶ 10    Marcus Reese testified that he was a member of the Vice Lords gang in June 1991. On the day of the shooting, he was on 78th Street and Winchester Avenue with Marquise Haynes, Scotty Cartledge, and Antonio Bean.[3] They were approached by "Buster," Brown, Jackson (whom Reese identified in court), and defendant (whom Reese also identified in court).[4] Brown, Jackson, and defendant were members of the Gangster Disciples gang. Brown and Buster argued with Bean, and then Brown, defendant, and Buster all stated, " '[y]eah, that's okay, we'll be back, we'll be back.' " Reese did not observe any weapons.

¶ 11    Later that day, Brown, Jackson, and defendant approached Reese on bicycles. Brown asked where Haynes was, and Reese replied that he did not know. Brown, Jackson, and defendant displayed firearms and left. At approximately 9 p.m., Reese was on 78th and Seeley Avenue with Scotty and other individuals, including Black, Anthony, and Savage. He and Scotty left for Church's Chicken, returned, and then left again.

¶ 12    On cross-examination, Reese testified that he saw defendant in the neighborhood frequently, and they did not have any "beefs." When he initially saw defendant, Brown, and Jackson, they were walking. The second time he saw them, it was beginning to get dark. Defendant's weapon was in his pants, and Reese could see the imprint of the weapon. Reese observed defendant "like grasping for it," but did not actually see a firearm. The morning after the shooting, Reese told police officers that when defendant approached him on a bicycle, defendant had a weapon. Reese answered in the affirmative when asked if he identified defendant in a line-up as "one of the people that was involved in the shooting that night."

_____

[3] Since Scotty Cartledge shares the same last name as another witness, Leonard Cartledge, we will refer to them by their first names.

[4] Buster's last name was not included in the record on appeal.

¶ 13    Leonard Cartledge testified that defendant (whom he identified in court), Brown, and Jackson (whom he also identified in court) were members of a street gang, but he did not know which gang. At approximately 9:10 p.m. on the day of the shooting, Leonard was at Church's Chicken on 79th and Damen when he heard gunshots. He and Jonathan Robinson exited Church's Chicken facing Seeley and saw Brown and Jackson running from Seeley to Damen holding handguns. Brown and Jackson ran to a blue Chevy on 78th and Damen, entered the vehicle, and it drove off. Another individual was already inside the vehicle, but Leonard could not identify that person. Leonard never saw Anderson drive the Chevy.

¶ 14    Chicago police officer Romas Arbataitis testified that he conducted a line-up regarding the shooting of Black, Anthony, Michael, and Savage that was viewed by Robinson. Robinson identified Anderson and Brown.[5] On cross-examination, Arbataitis confirmed that defendant was also in the line-up.[6]

¶ 15    Brown testified that he pled guilty to "murder and attempt" related to the shooting. He, Anderson, Jackson, and defendant were members of the Gangster Disciples gang. He did not know defendant to have any position in the gang. Brown admitted that, after his arrest, he was questioned regarding the shooting but denied making a statement to an assistant state's attorney (ASA). Brown testified that he was alone when he went to 78th and Seeley. Defendant was not with him during the shooting and did not possess a firearm. Brown told an ASA that he went alone and shot the individuals.

---

[5] It is unclear from Arbataitis' testimony what Robinson identified Brown and Anderson as being involved in.

[6] Arbataitis' testimony does not clarify whether Robinson identified defendant in the line-up.

¶ 16    On cross-examination, Brown testified that defendant did not have a position in the gang. He initially testified that he did not see defendant on the day of the shooting, but clarified that he saw defendant later that day at defendant's residence. Defendant was not with Brown when Brown shot at the individuals.

¶ 17    ASA Nick Arvanitis testified that on June 23, 1991, Brown gave a statement regarding the shooting. Arvanitis summarized Brown's statement in writing and allowed Brown to make corrections or changes. Then Brown, Brown's mother, a detective, a youth officer, and Arvanitis signed the statement. Brown did not tell Arvanitis that he was the sole shooter. Brown's statement was admitted into evidence.

¶ 18    Brown's statement is included in the record on appeal, and we have reviewed it. In the statement, Brown reports that defendant, Brown, Anderson, Jackson, and Eddie Macon were members of the Gangster Disciples gang. Defendant was the enforcer and responsible for reporting to the gang coordinator any individuals who bothered the gang. Defendant was to "set up any shooting" needed to "get back at people." The Gangster Disciples and Vice Lords were "at war." Brown and Jackson observed Scottie, a Vice Lord, near 77th Street and Winchester. Brown displayed a firearm, and Brown and Jackson told Scottie that they "were going to come back and get him." Brown and Jackson then told the coordinator that they saw Scottie, and the coordinator instructed them to "wait until it got dark to get him."

¶ 19    Brown continues that, later that evening, "they" saw Anderson, who asked if "they" were "ready to go get some Vice Lords." Brown, defendant, Macon, and Jackson entered Anderson's vehicle and drove to 78th and Hermitage Avenue to obtain firearms. Defendant possessed a "9 millimeter" and Macon possessed a "[t]ech-[n]ine." They drove down Seeley twice and observed

Vice Lords sitting on a porch. They then drove to a restaurant parking lot, where Brown, Anderson, defendant, and Jackson exited the vehicle and entered a gangway leading to the porch where Brown observed the Vice Lords sitting. Brown was responsible for watching for police and other individuals.

¶ 20    Near the porch, Anderson kneeled on the ground with the tech-nine and defendant stood with the nine millimeter. Brown stood a few feet away, and Jackson stood behind Brown. Anderson began shooting at the porch and moved closer, and then defendant began shooting. They ran through gangways and jumped fences to return to the vehicle. Brown ran with Anderson and met Jackson at the vehicle. Defendant and Anderson hid the firearms at 78th and Hermitage. Brown went to defendant's residence and then home.

¶ 21    Brown's statement also included that Brown "lied to the State's Attorney and the police" when he stated that Anderson was the individual who drove the vehicle from Church's Chicken, "but it was really Eddie."

¶ 22    On cross-examination, Arvanitis testified that Brown "gave different versions" of the events during the interview.

¶ 23    Defendant presented 10 witnesses who testified that defendant was in his mother's residence at approximately 8:30 p.m. on the night of the shooting. One of the witnesses testified that she was on the phone with defendant at the approximate time of the shooting, and eight of the witnesses testified that defendant did not leave the residence after he entered it at approximately 8:30 p.m.

¶ 24    The parties also stipulated that, if called to testify, Dr. Gary Mulardi would testify that as of May 23, 1991, defendant would have had difficulty running and jumping fences due to gunshot wound injuries he suffered earlier that May.

¶ 25    The court found Reese's testimony and Brown's statement to the police credible and found defendant's alibi witnesses incredible. The court found defendant guilty of one count of first-degree murder of Black and two counts of attempted first-degree murder of Anthony and Michael. It sentenced defendant to prison terms of 55 years for first-degree murder, to be served consecutively to the attempted first-degree murder sentences, and concurrent prison terms of 6 years for each count of attempted first-degree murder, for a total of 61 years in prison.

¶ 26    In a consolidated direct appeal with Jackson and Anderson, this court found no issues of arguable merit for appeal, allowed appellate counsel to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), and affirmed, holding, *inter alia*, that the evidence was sufficient to convict defendant. *Jackson et al.*, Nos. 1-94-3357, 1-94-3365 and 1-94-3949 (consolidated) (1996) (unpublished order under Supreme Court Rule 23).

¶ 27    In May 2011, defendant filed a *pro se* petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2010)). Defendant alleged, *inter alia*, that his due process rights were violated and he possessed newly discovered evidence that established that the State failed to provide sufficient evidence to convict him.

¶ 28    Attached to defendant's petition were affidavits from Jackson, Anderson, and Brown. Jackson averred that on the night of the shooting, he, Brown, and Anderson drove to 78th and Seeley. Jackson and Brown possessed firearms, and Anderson drove the vehicle. As they drove, Brown identified an individual and instructed Anderson to let him and Jackson out of the vehicle

at a nearby restaurant parking lot. Once out of the vehicle, Jackson and Brown entered an alley behind the location where they saw the individual. Brown walked along a gangway and began discharging a "nine millimeter tech semi-automatic machine gun." He and Brown then ran towards 78th and Damen, where Anderson was waiting in a vehicle. Jackson stated that he was "present at all times" of the incident and attested that defendant was neither present at nor involved in the shooting.

¶ 29    Anderson averred that on the night of the shooting for which he and defendant were convicted, defendant and Anderson "were not together" and defendant was not in Anderson's vehicle.

¶ 30    Brown averred that on the day of the shooting, he, Anderson, and Jackson drove down 78th and Seeley at approximately 9:10 p.m. He and Jackson exited the vehicle and walked down an alley behind a house. Brown observed several individuals standing in front of the residence. Brown and Jackson approached and began shooting. When Brown arrived at the police station, he falsely accused defendant of being one of the individuals that shot four people. Defendant "did not take part or have knowledge about the *** incident."

¶ 31    The State moved to dismiss the petition, arguing that it was untimely, improperly raised issues regarding constitutional violations and sufficiency of the evidence, and failed to state a cause of action under section 2-1401 of the Code. The circuit court granted the State's motion and dismissed defendant's petition.

¶ 32    Defendant appealed, contending, *inter alia*, that the circuit court erred in refusing to recharacterize his section 2-1401 petition as a postconviction petition filed pursuant to the Act. *People v. Taylor*, 2014 IL App (1st) 113760-U. This court affirmed, noting that the circuit court's

determination that defendant's filing was a petition for relief from judgment under section 2-1401 of the Code could not be reviewed for error pursuant to *People v. Stoffel*, 239 Ill. 2d 314 (2010). *Taylor*, 2014 IL App (1st) 113760-U, ¶ 18.

¶ 33 On November 3, 2014, defendant filed a *pro se* postconviction petition, alleging, *inter alia*, actual innocence. To support his assertion of actual innocence, defendant attached affidavits from Jackson, Brown, and Anderson, which were the same affidavits attached to his petition for relief from judgment. The petition advanced to the second stage, where defendant was represented by the Office of the Public Defender.[7]

¶ 34 On May 5, 2019, defendant's counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) and a supplemental postconviction petition, which counsel deemed necessary for an adequate representation of defendant's claims. The supplemental postconviction petition "incorporate[d] all the *pro se* claims," and argued actual innocence. Attached to the supplemental petition were Brown's statement made to the ASA, Jackson's affidavit that was attached to the original *pro se* petition, and a more detailed affidavit from Anderson.

¶ 35 Anderson's new affidavit averred that on the night of the shooting, defendant was neither present at nor involved in the shooting. Rather, Anderson, Brown, and Jackson were in Anderson's vehicle driving down 78th and Seeley. Jackson and Brown possessed firearms, and Anderson was the driver of the vehicle. They saw individuals in front of a house, and Brown identified one of them as "Scarface." Jackson and Brown instructed Anderson to let them out of the vehicle in a nearby restaurant parking lot. Brown and Jackson exited the vehicle and entered an alley behind

---

[7] The record on appeal does not reflect whether the petition advanced to the second stage by order of the circuit court or by operation of law, or when counsel was appointed.

the home on 78th and Seeley. As Anderson drove to 78th and Damen, he heard gunshots. A few minutes later, Brown and Jackson ran towards the vehicle and entered.

¶ 36     On June 15, 2021, the State filed a motion to dismiss defendant's postconviction petition, arguing that defendant failed to (1) allege a cognizable constitutional claim under the Act and (2) make a substantial showing of actual innocence.

¶ 37     On August 2, 2021, defendant's counsel filed another Rule 651(c) certificate and an amended postconviction petition, which counsel deemed necessary for an adequate representation of defendant's claims. The amended postconviction petition stated that it "replac[ed] all prior pleadings," and only alleged actual innocence. The attachments were the same as those attached to the supplemental petition: Brown's statement, Jackson's affidavit, and Anderson's more detailed affidavit.

¶ 38     In response, the State filed an amended motion to dismiss setting forth the same arguments that defendant failed to (1) allege a cognizable constitutional claim under the Act and (2) make a substantial showing of actual innocence.

¶ 39     The court granted the State's motion to dismiss defendant's postconviction petition, finding that the affidavits were not newly discovered or conclusive in their "own right," and defendant failed to make a substantial showing of actual innocence. Jackson's affidavit was not newly discovered, as he was known to defendant "as a potential source of the already known facts," and his affidavit was not conclusive. The court noted that Jackson made a statement to police, which showed that defendant was not involved in the shooting, which contains the same information as

the affidavit now submitted.[8] Anderson's affidavit also was not newly discovered and was cumulative.[9] The court further found that there were no factual allegations that Jackson and Anderson would have asserted their fifth amendment privilege if called to testify, and there was no due diligence shown to obtain Jackson's and Anderson's testimony at trial. Further, the court noted Brown's statement was not newly discovered, and therefore, it failed to make a substantial showing of actual innocence and was not supportive of defendant's actual innocence.

¶ 40    Defendant now appeals, contending that the circuit court erred in dismissing his postconviction petition at the second stage of the proceedings where he made a substantial showing of actual innocence because Jackson's and Anderson's affidavits were newly discovered evidence that was material and noncumulative, and would probably change the result on retrial.

¶ 41    The Act allows a criminal defendant to challenge a conviction for violations of federal or state constitutional rights, or both. *People v. Jean*, 2024 IL App (1st) 220807, ¶ 28. A postconviction proceeding occurs in three stages. *People v. Knapp*, 2020 IL 124992, ¶ 43. The circuit court here dismissed defendant's petition at the second stage.

¶ 42    At the second stage, counsel is appointed to represent the defendant, if indigent, and the State may move to dismiss the petition. *Jean*, 2024 IL App (1st) 220807, ¶ 28. At this stage in the proceedings, the defendant bears the burden of establishing a substantial showing of a constitutional violation. *Id.* If the State moves to dismiss the postconviction petition, the circuit

---

[8] Jackson's statement is included in the record on appeal; however, it was not admitted into evidence during defendant's trial.

[9] Citing *People v. Velasco*, 2018 IL App (1st) 161683, ¶ 104, the court noted that Anderson's affidavit was not properly notarized and did not provide "evidentiary support" for defendant's petition. We observe that Anderson's affidavit bears the stamp of a notary but does not include a notary clause. Neither party on appeal addresses the validity of the notarization.

court must then rule on the "sufficiency of the allegations without engaging in fact-finding and takes all well-pleaded facts as true" (*People v. McCants*, 2024 IL App (1st) 220837, ¶ 28), unless positively rebutted by the trial record (*People v. Madison*, 2023 IL App (1st) 221360, ¶ 33). But if the defendant makes the requisite substantial showing for a claim, then the circuit court advances the claim to third stage proceedings for an evidentiary hearing. *Madison*, 2023 IL App (1st) 221360, ¶ 33. We review the second-stage dismissal of a postconviction petition *de novo*. *People v. Dupree*, 2018 IL 122307, ¶ 29.

¶ 43   Defendant asserts the circuit court erred in dismissing his claim of actual innocence. "A postconviction petition should only be dismissed at the second stage when the petitioner's allegations of fact, liberally construed and considered in light of the original trial record, fail to make a substantial showing of actual innocence." *People v. Smith*, 2021 IL App (1st) 181728, ¶ 18.

¶ 44   To succeed on a postconviction claim of actual innocence at the second stage, a defendant's supporting evidence must be "(1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial." *Smith*, 2021 IL App (1st) 181728, ¶ 19. Newly discovered evidence must have been discovered after trial and could not have been discovered by the petitioner earlier through the exercise of due diligence. *People v. Robinson*, 2020 IL 123849, ¶ 47. The supporting evidence is material if it is relevant and probative of the petitioner's innocence; non-cumulative when it adds to the evidence heard at trial; and conclusive when, considered with the trial evidence, it would probably lead to a different result on retrial. *Id.*

¶ 45   Jackson and Anderson's affidavits are newly discovered evidence. While Jackson and Anderson were known to defendant prior to trial, they were tried simultaneously with defendant

and could not have been forced to testify, given their fifth amendment right against self-incrimination. *People v. Edwards*, 2012 IL 111711, ¶ 38 (co-defendant's affidavit considered newly discovered where co-defendant had a fifth amendment right to avoid self-incrimination and no amount of diligence could have forced him to violate that right). Further, Jackson and Anderson's affidavits are material because they are relevant to and probative of defendant's actual innocence and whether he was involved in the shooting. Moreover, the State does not contest the materiality of the affidavits.

¶ 46    Jackson and Anderson's affidavits are also noncumulative. The State contends that Brown testified that defendant was not involved in the shooting, and, therefore, Jackson and Anderson's affidavits averring that defendant was not involved in the shooting are cumulative to the evidence heard at trial. However, the court did not hear testimony from Jackson and Anderson at trial, and the evidence set forth in their affidavits provides a different narrative of the events, adding new information to the evidence heard at trial. Further, while defendant presented 10 alibi witnesses, none of those witnesses testified regarding the shooting while Jackson and Anderson's affidavits provide eyewitness accounts. See *People v. Ortiz*, 235 Ill. 2d 319, 335-36, (2009) (co-defendant's affidavits considered noncumulative where they supplied first-person accounts of the shooting that directly contradicted the prior statements of the one witness for the prosecution and no other defense witness offered the evidence at trial).

¶ 47    Lastly, Jackson and Anderson's affidavits are conclusive. Evidence that is so conclusive as to probably change the result on retrial "places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Robinson*, 2020 IL 123849, ¶¶ 47, 56. As noted,

in determining whether the supporting evidence is conclusive, this court must consider both the supporting evidence and the evidence presented at trial. *Id ¶¶* 47-8.

¶ 48    In their affidavits, Jackson and Anderson averred that they were involved in the shootings and defendant was neither involved nor present, which casts doubt on defendant's guilt for offenses premised on those shootings. Jackson identifies Brown as the only shooter, Anderson identifies Jackson and Brown as possible shooters, and Jackson and Anderson identify Anderson as the driver. Jackson and Anderson's affidavits align with Savage's testimony that he saw three individuals in the vehicle that drove past, Robinson's testimony identifying only Brown and Jackson leaving the scene carrying firearms, and Leonard's testimony identifying only Jackson and Brown running from Seeley to Damen and entering a vehicle. Moreover, 10 alibi witnesses testified defendant was elsewhere at the time of the shooting.

¶ 49    The attestations in Jackson and Anderson's affidavits are not positively rebutted by any evidence in the record. They conflict with trial evidence identifying defendant as a shooter. But the only two witnesses who identified defendant as being involved in the shooting were Reese, who was not present during the shooting and did not witness it, and Brown, who provided multiple versions of the events to the ASA and at trial recanted his statement that defendant was present at the shooting. Further, any conflict between the trial evidence and the new evidence "must be resolved through factfinding and by making credibility determinations," which occurs at the third stage of proceedings. *Smith*, 2021 IL App (1st) 181728, ¶ 28.

¶ 50    Considering Jackson's and Anderson's affidavits together with the evidence presented at trial, we find that the affidavits place the trial evidence "in a different light," undermine "the court's

confidence in the judgment of guilt," and are, therefore, conclusive. See *Robinson*, 2020 IL 123849, ¶ 56.

¶ 51    Accordingly, the circuit court erred in dismissing the amended petition claiming actual innocence. We reverse the judgment of the circuit court and remand for third stage proceedings.

¶ 52    Reversed and remanded.