2026 IL App (1st) 242589-U

FIRST DIVISION
March 31, 2026

No. 1-24-2589

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 13 CR 19710 |
| | ) | |
| JESSIE THOMAS, JR., | ) | Honorable |
| | ) | Angela Munari Petrone, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1   *Held*:   We reverse the judgment of the circuit court of Cook County granting the State's motion to dismiss defendant's petition for postconviction relief; defendant received unreasonable assistance of retained postconviction counsel in second-stage postconviction proceedings; therefore, we must remand for new second-stage proceedings with reasonable assistance of counsel, without regard to the substantive merit of defendant's postconviction claims.

¶ 2   Following a bench trial, the circuit court of Cook County convicted defendant, Jessie Thomas, Jr., of attempt (first degree murder), aggravated domestic battery, and armed habitual criminal. Defendant filed a *pro se* petition for postconviction relief, which the trial court summarily dismissed. This court reversed the summary dismissal of defendant's *pro se* petition and remanded the case for second-stage postconviction proceedings. On remand for second stage

proceedings, defendant was represented by two retained counsels, who filed an amended postconviction petition. The State filed a motion to dismiss, which the trial court granted. Defendant appeals the dismissal of the petition on the sole ground that retained counsels provided unreasonable assistance of postconviction counsel. For the following reasons, we reverse and remand for new second-stage proceedings.

¶ 3                                  BACKGROUND

¶ 4     Following a 2014 bench trial, the circuit court of Cook County convicted defendant, Jessie Thomas, Jr., of one count of attempt (first degree murder), one count of aggravated domestic battery, and one count of armed habitual criminal based on the shooting of defendant's then girlfriend, Tinisha Webster. The evidence at trial was that defendant was at the apartment of the victim, with the victim's sister, Eiland (who shared the apartment). Also present was their brother, Frederick Holman, and various acquaintances including children on December 25, 2012, to celebrate the Christmas holiday. Defendant and the victim went into the victim's bedroom where they could be heard arguing. The others in the apartment heard a gunshot and the victim's brother, sister, and a guest, Brown, ran into the bedroom. The victim's sister testified that when she entered the bedroom she observed the victim laying on the bed and defendant holding a revolver. Her brother rushed at defendant and began wrestling with him. Brown testified that when she entered Holman was already wrestling with defendant and that defendant was holding a revolver. Brown testified that defendant ran out of the room with the revolver.

¶ 5     Detective Halloran, a Chicago Police Detective assigned to investigate the case, testified that three days after the shooting he received a phone call, he returned to the apartment, and the victim's brother gave him the revolver allegedly used in the shooting. Eiland and Brown identified the recovered gun as the gun they observed defendant holding on the night of the

shooting but police could not match bullet fragments retrieved from the victim to the recovered revolver.

¶ 6    After the State presented its case defendant made a motion for a directed finding, which the trial court denied. Defendant did not present any evidence. The trial court found defendant guilty and sentenced him to imprisonment for 36 years for attempt (first degree murder), 30 years for domestic battery, and 30 years for armed habitual criminal, to be served consecutively. Defendant filed a motion for a new trial, which the trial court denied.

¶ 7    Defendant did not take a direct appeal. The trial court's order on the State's motion to dismiss states, and this court's records show, that on December 4, 2014, defendant filed a notice of appeal. However, on February 9, 2017, after several motions to extend time had been granted, a motion to dismiss the appeal was filed, which this court granted on February 27, 2017. No response to the motion to dismiss was filed.

¶ 8    In June 2017, defendant filed a *pro se* petition for postconviction relief. Defendant's *pro se* petition stated claims for (1) ineffective assistance of counsel for failure to meet with defendant and adequately prepare a defense, (2) ineffective assistance of counsel for failure to pursue a defense of self-defense, (3) ineffective assistance of counsel for failure to attempt "to reopen the case" based on the alleged availability of testimony from the victim's mother that the shooting was an accident, (4) ineffective assistance of counsel for failure to challenge defendant's convictions for attempt (first degree murder) and aggravated domestic battery based on the same gunshot under the one-act, one-crime doctrine, (5) violation of defendant's right to due process, (6) violation of defendant's sixth amendment right to confront witnesses and ineffective assistance of counsel where the victim was allegedly not subpoenaed and did not testify at trial, (7) ineffective assistance of counsel for failure to call multiple witnesses who

could allegedly testify to statements by the victim that the shooting was an accident, and (8) denial of a fair trial and violation of defendant's right to due process based on alleged inconsistencies in the evidence and issues with witnesses' credibility with regard to the gun used in the shooting.

¶ 9 Defendant's *pro se* petition alleged, with regard to self-defense, as follows: "In this situation, [the victim] went and got the gun and pointed it at me and stated of me talking to a friend on the phone ***. At that point, I tried to get the gun from her in fear of my life and we struggled and the gun went off. I committed no crime because I was defending myself, from [the victim,] who attacked me." Defendant cited three affidavits attached to the petition as evidence in support of this claim. The affiants were Xavier Cox, Shaneiqua Armstead, and defendant. Cox and Armstead's statements supported defendant's version of events.

¶ 10 Cox stated that the victim told him that on the night of the shooting she became upset because defendant was talking on the phone to another woman, that she retrieved a gun and pointed it at defendant, and defendant tried to take the gun away and it went off. Cox also averred that Webster's mother told him that the shooting was an accident. Armstead stated that on December 25, 2012, she was on the phone with defendant, Webster came on the phone and said something to Armstead, then Armstead heard "muffling in the background" before the phone went call ended.

¶ 11 In defendant's own affidavit, he stated that the victim confronted him about speaking to another woman on the phone (Armstead). Defendant averred that the victim "then went and got a gun and pointed it at me and stated she was going to kill me." Defendant stated that he attempted to get the gun away from the victim and "during our struggle, the gun went off."

Defendant stated that he did not have a gun when he arrived at the victim's apartment, he did not take a gun into the bedroom, and he did not take a gun with him when he left.

¶ 12    On July 28, 2017, the trial court summarily dismissed defendant's *pro se* postconviction petition as frivolous and patently without merit. Defendant appealed. The State and defendant agreed that defendant's claim of ineffective assistance of trial counsel for failing to challenge defendant's conviction for aggravated domestic battery under the one-act, one-crime doctrine has arguable merit and that, as a result, defendant's entire petition must be remanded for further postconviction proceedings. On June 9, 2020, this court granted the parties' agreed motion and entered a summary disposition.

¶ 13    On August 11, 2020, retained counsel appeared in court on behalf of defendant and requested a continuance to speak to the State. On September 1, 2021, additional retained counsel filed an appearance as co-counsel. (Both counsels continued to represent defendant jointly.) On the same day, co-counsel filed an Attorney Certification Pursuant to Illinois Supreme Court Rule 651(c). The Rule 651 certificate stated:

> "The undersigned, on oath, as the attorney in this matter and pursuant to Illinois Supreme court Rule 651 (c) has consulted with petitioner by phone, mail, electronic means or in person to ascertain his contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial and sentencing and reviewed the original court file. Counsel has conducted a diligent investigation into this matter and he verily believes the facts and circumstances support the filing of this Petition and the statements in said Petition are true in substance and in fact."

¶ 14     On December 7, 2021, retained counsel filed a "Verified Petition for Post-Conviction Relief." (Co-counsel informed the court that he learned that defendant's first attorney's filing of an amended petition "was not anywhere on Odyssey;" therefore, co-counsel refiled it.) The trial court informed counsel that the petition was missing a signature and did not specify whether it was a supplemental petition to defendant's *pro se* petition or an amended petition supplanting defendant's *pro se* petition. On August 31, 2022, in court, one of defendant's retained counsels stated they were "going to file an amended PC." On September 29, 2022, defendant's retained counsel refiled a signed copy of the Verified Petition for Post-Conviction Relief.

¶ 15     On October 3, 2023, the State filed a motion to dismiss the petition based on forfeiture of "several" of defendant's claims, including defendant's claim of ineffective assistance of counsel for failing to challenge defendant's convictions under the one-act, one-crime doctrine; and failure to satisfy either *Strickland* prong for defendant's claims of ineffective assistance, including defendant's claims based on the one-act, one-crime doctrine and trial counsel's failure to raise defenses of self-defense or accident. Specifically as to defendant's claims of ineffective assistance based on failing to raise defenses, the State argued that (1) defendant's affidavit fails to demonstrate that defendant informed his trial attorney he wanted to raise self-defense or accident, fails to demonstrate police did not recover the gun used in the shooting, and fails to establish that the victim's hearsay statements would have been admissible, (2) Xavier Cox's affidavit is inadmissible because it is not notarized and, regardless, Cox did not state he provided defendant's trial attorney the information in the "affidavit" before trial or that Cox was willing to testify, and (3) Armstead's affidavit did not state that she provided defendant's trial counsel with the information in her affidavit nor that she is or was willing to testify.

¶ 16    Defendant did not file a written response. Defendant's retained counsel argued at the hearing on the State's motion to dismiss. Counsel argued, in pertinent part, as follows:

"MR. MINKUS [Defendant's attorney]: Judge, it is our contention that the only way to resolve the well plead allegations made in the post conviction petition in this matter is to actually hold a third stage evidentiary hearing. The allegations in this case allege primarily ineffective assistance of counsel by an attorney with a long and respected history in the building ***.

* * *

Who, in good faith, I think, made a significant tactical error ***. *** [T]he gist of all those affidavits *** are that *** the trial lawyer, was made aware of the fact that there was a legitimate claim of self defense *** [that was not raised] for reasons that can only be clarified through a third stage hearing where [trial counsel] would be able to explain what her trial strategy was ***. [Trial counsel] failed *** to assert the only plausible defense in this matter, which would have either been self defense, or that the gun in this case went off accidentally when the complaining witness it would be argued lunged for and reached for that weapon.

* * *

THE COURT: All right. So I'm clear, you're saying the complaining witness lunged for a weapon. The weapon was where when the complainant lunged for it?

MR MINKUS: The weapon in this case—we're not sure, but I believe would have been in the possession of the defendant in this matter."

¶ 17    Counsel's statement that the gun was in defendant's possession contradicted the self-defense allegations of defendant's petition that the victim had pointed the gun at defendant and the gun discharged during a struggle.

¶ 18    The State argued that "[f]orfeiture does apply to the following claims" including, *inter alia*, defendant's claim of "ineffective assistance of counsel for failure to challenge the conviction under the one-act one-crime doctrine. Each of those issues could have been raised on direct appeal."

¶ 19    On December 9, 2024, the trial court issued a written order granting the State's motion to dismiss except as to defendant's claim of ineffective assistance of trial counsels for failure to challenge defendant's multiple convictions under the one act-one crime rule. The trial court's order states that the court would issue a corrected mittimus "resentencing defendant on one charge, count 2, attempt-first degree murder, to 36 years IDOC, 3 years MSR, credit 449 days, *nunc pro tunc* to December 4, 2014."

¶ 20    This appeal followed.

¶ 21                              ANALYSIS

¶ 22    This is an appeal from the second stage dismissal of a petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2022)) where defendant was represented by retained counsel. Defendants have a right to retain counsel in postconviction proceedings. *People v. Cotto*, 2016 IL 119006, ¶ 42 ("Both retained and appointed counsel must provide reasonable assistance to their clients after a petition is advanced from first-stage proceedings."); see *People v. Gawlak*, 2019 IL 123182, ¶ 33 (citing *Powell v. State of Alabama*, 287 U.S. 45, 69 (1932)). "Under the procedural framework of the Act, there are three stages of postconviction proceedings. [Citation.] At the first stage, the circuit court determines whether the

petition is frivolous or patently without merit." *People v. Harris*, 2025 IL 130351, ¶ 32. "If the petition is not dismissed at the first stage, it advances to the second stage, where *** counsel *** may amend the petition as necessary, and the State may file a motion to dismiss the petition or answer the petition." *Id.* "If the petitioner makes the requisite showing, the petitioner is entitled to a third-stage evidentiary hearing. [Citation.]" *Harris*, 2025 IL 130351, ¶ 33. "We review a trial court's dismissal of a postconviction petition at the second stage *de novo.*" *People v. Addison*, 2023 IL 127119, ¶ 17.

¶ 23     "[T]here is no constitutional right to the assistance of counsel" in postconviction proceedings. *Addison*, 2023 IL 127119, ¶ 19. "[A] postconviction petitioner is entitled only to *** a ' "reasonable" level of assistance.' ([citation])." *Id.*

> "To ensure that postconviction petitioners receive that level of assistance, [Illinois Supreme Court] Rule 651(c) provides:
>
>> 'The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions.' Ill. S. Ct. R. 651(c) (eff. July 1, 2017).
>
> Compliance with the rule is mandatory ([citation]), but once postconviction counsel files a Rule 651(c) certificate, a rebuttable presumption of

reasonable assistance arises ([citation]). The defendant bears the burden of overcoming that presumption by showing that postconviction counsel did not substantially comply with the strictures of the rule. [Citation.] The defendant may do so by, *inter alia*, demonstrating that postconviction counsel did not make all necessary amendments to the *pro se* petition. [Citations.]" *Addison*, 2023 IL 127119, ¶¶ 20-21.

Defendant's retained postconviction counsels were required to comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). *People v. Richmond*, 188 Ill. 2d 376, 381 (1999) ("we conclude that Rule 651(c) is applicable in these circumstances, when a defendant who files a *pro se* post-conviction petition is later represented by retained counsel in the post-conviction proceedings"). "Although strict compliance is not necessary, postconviction counsel must substantially comply with Rule 651(c). Our review is *de novo.*" *People v. Mason*, 2016 IL App (4th) 140517, ¶ 19.

¶ 24 Defendant argues that the record rebuts the presumption that his retained counsels provided a reasonable level of assistance. Defendant argues that retained counsels provided unreasonable assistance by failing to examine the record or to investigate defendant's claims, "or even to ascertain them." Defendant argues that retained postconviction counsels failed to make "*any* amendments to the petition[] filed *pro se* that are necessary for an adequate presentation of [defendant's] contentions." Defendant asserts the body of their "verified petition" "was a verbatim cut-and-paste of an appellate brief authored by the Office of the State Appellate Defender [for defendant's appeal of the summary dismissal of his *pro se* petition] containing argument inapplicable to second-stage proceedings." Defendant argues the portions of the verified petition retained counsels did author, (a) the introduction and (b) the conclusion, (a)

asserted that defendant sought relief based on actual innocence but counsels never included an actual innocence claim, and (b) demonstrated "a misunderstanding of their duties as second-stage *** counsels" by stating they needed more time to amend the petition, add claims, and gather evidence—and stated they had not "examined the record" of the evidence admitted at trial because they have not had access to it.

¶ 25    Defendant further argues that retained counsels' argument at the hearing on the State's motion to dismiss demonstrated a lack of understanding of defendant's claim regarding self-defense where retained counsel asserted a belief that defendant had the gun when the victim lunged at defendant, whereas defendant's *pro se* petition actually alleged that the victim was the first to retrieve the gun, then it went off as defendant tried to take it from her.

¶ 26    The State argues that retained counsels "conducted a months-long investigation, consulted with defendant, examined the record, filed an attorney-drafted verified post-conviction petition that expanded upon and shaped defendant's *pro se* claims into proper legal form, and advocated effectively at the People's motion to dismiss hearing." The State argues the record does not rebut the presumption raised by retained counsels' 651(c) certificate.

¶ 27    In support of its "months long investigation" argument, the State relies on retained counsels' updates to the trial court that counsels were investigating and the matter was proceeding. The State dismisses retained counsel's statement at the hearing on the motion to dismiss about possession of the gun as a "minor verbal imprecision" that still captured the "core claim that there was a defensive struggle over the gun." The State argues that "post-conviction counsel's overall advocacy" demonstrates that counsels were familiar with defendant's claims because counsels argued that the allegations and affidavits supported defenses of self-defense or accident necessitating a third stage hearing. The State argues that the prayers for relief in the

conclusion of the verified petition are "standard" and "reflect post-conviction counsel's awareness that second-stage proceedings may evolve ***." The State also argues that the verified petition for postconviction relief did advance an actual innocence claim that "reasonably relied on the existing affidavits" and "elaborated on the ineffective assistance claims." That is, the State argues, "the petition framed the *pro se* claims (*e.g.* self-defense/accident) as supporting innocence, even if not labeled as a standalone claim." The State does not dispute retained counsels' reliance on the prior appellate brief but argues that the Act "does not mandate wholesale rewriting if existing arguments sufficiently frame the issues."

¶ 28     The body of the verified petition (the portion other than the introduction and conclusion) is not an *exact* copy of the opening appellate brief filed in defendant's appeal from the summary dismissal of his *pro se* postconviction petition—but it is very close to one. *People v. Brown*, 2023 IL App (2d) 220334, ¶ 26 n2 ("An appellate court may take judicial notice of its own records."). Beyond the "Introduction" and "Conclusion" we have found scant additional text and a few minor deletions from the opening brief in defendant's prior appeal. It is clear the brief was cut, paste, and *very* slightly edited.

¶ 29     "There is no requirement that post-conviction counsel must amend a petitioner's *pro se* post-conviction petition. [Citation.] Nevertheless, Rule 651(c) plainly requires that appointed post-conviction counsel make 'any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions.' [Citations.]" *People v. Turner*, 187 Ill. 2d 406, 412 (1999). Further, in *People v. Perkins*, 229 Ill. 2d 34, 44 (2007), our supreme court found that "the purpose of Rule 651(c) is to ensure that counsel shapes the petitioner's claims into proper legal form and presents those claims to the court" and to do so, "postconviction counsel has a duty under Rule 651(c) to meet certain procedural requirements to present a

constitutional claim adequately under the Act." *Id*. See *Addison*, 2023 IL 127119, ¶ 30 (if postconviction counsel amends petition, amended petition must present claims in proper legal form). Despite its source, the verified petition filed by retained counsels is definitely not the same document as defendant's *pro se* petition. The rule does not say that if second-stage counsel files an amended petition (as is evident occurred in this case despite the failure to label the pleading as such[1]) the amended petition must be *sui generis*. Thus, regardless of their methods, the question for us is whether retained counsels' verified petition is "an adequate presentation of [defendant's] contentions" in "proper legal form."

¶ 30 To make that determination, we first review the second stage of postconviction proceedings. Initially, we note the fundamental difference between first-stage postconviction proceedings and second-stage postconviction proceedings.

> "During the second stage, the circuit court must determine whether the
> petition and any accompanying documentation make a substantial showing of a
> constitutional violation. [Citations.] In doing so, the court must not engage in fact-
> finding or credibility determinations but must take as true all well-pleaded facts
> that are not positively rebutted by the original trial record. [Citation.] If the circuit
> court determines that the petitioner made a substantial showing of a constitutional
> violation, the petition proceeds to the third stage for an evidentiary hearing."
> *People v. Madison*, 2023 IL App (1st) 221360, ¶ 33.

---

[1] "[T]he 'character of [a] pleading should be determined from its content, not its label,' and 'when analyzing a party's request for relief, courts should look to what the pleading contains, not what it is called.' [Citation.]" *United Equitable Insurance Co. v. Thomas*, 2021 IL App (1st) 201122, ¶ 63.

¶ 31 Moreover, in *People v. Wright*, 2013 IL App (4th) 110822, ¶ 22, the court wrote:

"For example, if the petition claims ineffective assistance of counsel, the question, at the first stage of the postconviction proceeding, is not whether the defendant has ' "demonstrate[d]" or "prove[d]" ineffective assistance by "showing" that counsel's performance was deficient and that it prejudiced the defense.' [Citation.] *That is the burden the defendant must carry in the second stage of the postconviction proceeding*, in which he or she must 'make a substantial showing of a constitutional violation.' [Citation.] In the first stage, by contrast, '[a] different, more lenient formulation applies' ([citation]): we apply not the *Strickland* test but the ' "arguable" *Strickland* test'—and that qualifier 'arguable' is crucial; it is not synonymous with 'ultimately correct' ([citation]). 'At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced.' [Citation.]" *Wright*, 2013 IL App (4th) 110822, ¶ 22.

See *People v. Jackson*, 2017 IL App (1st) 153138-U, ¶ 21 ("the standard a postconviction petition must meet in order to withstand dismissal differs depending on the stage of the postconviction proceedings. In first-stage proceedings, a defendant need only present the 'gist' of a constitutional claim ([citation]), whereas in second-stage proceedings a defendant must make a 'substantial showing of a constitutional violation' ([citation])").

¶ 32 Next, we look to the requirements of Rule 651(c), which apply at the second stage. "Rule 651(c) requires post-conviction counsel only to examine 'as much of the transcript of

proceedings as is necessary to adequately present and support those constitutional claims raised by the petitioner.' [Citation.]" *Turner*, 187 Ill. 2d at 411-12. Postconviction counsel must make any "amendments which [are] necessary for an adequate presentation of the claims in petitioner's *pro se* petition" including adding "essential elements of petitioner's legal claims." *Turner*, 187 Ill. 2d at 413. "Counsel [does] not overcome these omissions in the *pro se* post-conviction petition itself by raising the additional elements of petitioner's claims at the hearing on the State's motion to dismiss the post-conviction petition." *Turner*, 187 Ill. 2d at 413. Postconviction counsel must also "attach any affidavits to support the claims in the post-conviction petition or offer [an] explanation for their absence." *Turner*, 187 Ill. 2d at 414. We determine whether "post-conviction counsel's performance was unreasonable and fell below the level of assistance required by Rule 651(c)" based on "the totality of the circumstances." *Turner*, 187 Ill. 2d at 414.

¶ 33     Finally, we find it useful to restate here relevant portions of the verified petition. We begin with the portions defendant's retained counsels did draft: the introduction and conclusion.

### "**INTRODUCTION**

Petitioner JESS THOMAS seeks relief based on actual innocence, a claim he has made consistently and unflaggingly since his arrest. The petitioner also complains of ineffective assistance of trial counsel and numerous errors committed by the trial court specifically, this Petition presents (1) the errors committed by the trial court (2) the inconsistent testimony of the State's witnesses and (3) the ineffectiveness of trial counsel all which would have changed the outcome of JESSE THOMAS's trial. JESSE THOMAS requests that the Court conduct an evidentiary hearing with respect to this new evidence and ultimately reverse his conviction and order a new trial."

"**CONCLUSION**

WHEREFORE, Petitioner JESSE THOMAS requests that this Court:

1. Docket this petition for further proceedings;

2. Grant Petitioner sufficient time and leave to amend this petition to add additional claims and supporting affidavits and factual material as his investigation continues;

3. Grant Petitioner the authority to obtain subpoenas for witnesses, documents and other discovery necessary to prove the facts alleged in the petition, including but not limited to access to the evidentiary material admitted at trial, to which Petitioner and his counsel have not had access;

4. Conduct an evidentiary hearing;

5. Reverse Petitioner's conviction or order a new trial; and

6. Grant such other relief as may be appropriate."

¶ 34    Next we provide some of the text from the second-stage verified petition/brief on appeal from summary dismissal (which are identical) that is pertinent to our disposition. We find, despite the State's argument that retained counsels "add[ed] an actual innocence argument tied to existing affidavits," there is no effort in the verified petition to actually raise a claim of "actual innocence" under the Act. See *People v. Coleman*, 2013 IL 113307, ¶ 96 (stating what must be shown "to succeed on a claim of actual innocence"). Rather, the verified petition argues that defendant's trial attorneys should have raised defenses of self-defense or accident, either of which, if successful, would have resulted in acquittal. We find the use of "innocence" in the verified petition accidentally misleading.

¶ 35    A representative sampling from retained counsels' *second-stage* verified postconviction petition includes:

1. "This Court reviews the summary dismissal of a post-conviction petition De novo."

2. "Thus, the petition and supporting affidavits establish that Jesse arguably could have asserted self-defense and accident as defenses."

3. "[T]he petition and supporting documents establish that counsel arguably knew that [defendant's girlfriend] was the aggressor and pulled a gun on [defendant,] that the two struggled over the gun, that the gun accidentally discharged, and that [defendant's girlfriend] was willing to testify as to what really happened."

4. "Notwithstanding any potential hearsay in the affidavits of Xavier Cox, Anthony Williams, Sherry Brownleee, and [defendant's father,] each of those affidavits is proper support for the allegations in [defendant's] petition because it 'could lead, after counsel is appointed, to admissible evidence at a future trial.' [Citation.]"

5. "Is it reasonable to expect affidavits from witnesses who think they will be prosecuted if they testify, and who may have misled the police by turning over a gun that had nothing to do with the shooting? It is not. Such witnesses require something more than the pleas of a father trying to undo a manifest injustice; they require the subpoena power of an attorney at the second post-conviction stage. See, e.g., People v. Johnson, 154 Ill. 2d 227, 245 (1993) ('at

a minimum, [post-conviction] counsel [has] an obligation to attempt to obtain evidentiary support for claims raised in the post-conviction petition.').'

6. "[Defendant's] pro se post-conviction petition makes a non-frivolous and arguable claim that defense counsel provided ineffective assistance by failing to prepare [defendant] to testify and failing to call him as a witness in support of his defenses. *** This arguably denied [defendant] the right to meaningfully exercise his right to testify."

7. "The entire petition should have been docketed for second-stage post-conviction proceedings."

¶ 36 Examining the totality of the circumstances, we cannot find that retained counsels provided defendant reasonable assistance in second stage proceedings on the petition for postconviction relief. *Turner*, 187 Ill. 2d at 414-15.

¶ 37 Defendant argues that retained counsel's inability to state who defendant contends had the gun when the struggle ensued refutes the presumption that retained counsels "ascertain[ed] his or her contentions of deprivation of constitutional rights." That may be true, but we do not find it dispositive. First, pursuant to Rule 651(c), postconviction counsel's obligation is to amend the petition as necessary. Second, pursuant to *Turner*, we find that our focus is on the allegations in the petition itself rather than counsel's arguments at a hearing on the State's motion to dismiss. *Turner*, 187 Ill. 2d at 413 ("Counsel did not overcome these omissions in the *pro se* post-conviction petition itself by raising the additional elements of petitioner's claims at the hearing on the State's motion to dismiss the post-conviction petition."); but see *People v. Urzua*, 2023 IL 127789, ¶ 64 ("counsel's misstatement of the Act's affidavit requirements during argument on the State's motion to dismiss clearly rebutted retained counsel's Rule 651(c)

certificate's presumption of reasonable assistance"). The verified petition itself did not misstate defendant's contention that his then girlfriend first retrieved the gun and pointed it at him before a struggle over the gun started and the gun, allegedly, accidentally went off.

¶ 38    Retained postconviction counsels were required to examine the record of the proceedings at the trial "as is necessary to adequately present and support" the claims raised in the *pro se* petition. Ill. S. Ct. R. 651(c); *Turner*, 187 Ill. 2d at 411-12. Yet, retained counsels prayed for "the authority to obtain *** documents and other discovery *necessary to prove the facts alleged in the petition*, including *** access to the *evidentiary material admitted at trial*." (Emphases added.) We find that retained counsels effectively admitted their noncompliance with this requirement of Rule 651(c). Retained counsels certified that they "examined the record of the proceedings at the trial and sentencing and reviewed the original court file" and "verily believe[] the facts and circumstances support the filing of this Petition and the statements in said Petition are true in substance and in fact." But then counsels asked for the authority to examine the record, not to expand on the potential claims as the State suggests, but, at least in part, to obtain evidence from the trial necessary to prove the facts alleged in the petition. In this case, "the record contradicts counsel's statement in his Rule 651(c) certificate that [they] examined the record for defendant's case." Compare *People v. Stone*, 2020 IL App (1st) 172925-U, ¶ 43.

¶ 39    We note that a failure to substantially comply with even a single requirement of Rule 651(c) is sufficient to find that retained counsels failed to provide a reasonable level of assistance. *Addison*, 2023 IL 127119, ¶ 36 ("in [*People v. Brown*, 52 Ill. 2d 227, 230-31 (1972),] we held that a remand was required for the sole reason that the record did not show that postconviction counsel had examined the trial record"); see *Turner*, 187 Ill. 2d at 410-11 ("This court has consistently reversed the dismissal of post-conviction petitions where there is a

complete absence of consultation between petitioner and appointed counsel."); see also *People v. Wills*, 2018 IL App (4th) 170385-U, ¶ 21 ("there is no record of postconviction counsel ever checking out the transcripts from the clerk's office. Based on our review of the record, we cannot conclude that there was a 'clear and affirmative showing of compliance' with Rule 651(c). [Citation.] Accordingly, we find a lack of compliance with the requirements of Rule 651(c).").

¶ 40     As for amendments necessary to put defendant's claims into proper legal form to adequately present them to the trial court, we find that although retained counsels did file an amended petition, and did file a Rule 651(c) certificate giving rise to a rebuttable presumption of compliance, defendant has overcome "that presumption by showing that postconviction counsel did not substantially comply with the strictures of the rule" by "demonstrating that postconviction counsel did not make all necessary amendments to the *pro se* petition." *Addison*, 2023 IL 127119, ¶ 21.

¶ 41     The failure to plead that defendant's allegations make a "substantial showing" of a constitutional violation, rather than alleging that defendant's allegations make an "arguable" claim of a constitutional violation, is not a matter of form over substance. The two standards are significantly substantively different. *Wright*, 2013 IL App (4th) 110822, ¶ 22 (citing *People v. Tate*, 2012 IL 112214, ¶ 19). In *Tate*, our supreme court found:

> "This 'arguable' *Strickland* test demonstrates that first-stage postconviction petitions alleging ineffective assistance of counsel are judged by a lower pleading standard than are such petitions at the second stage of the proceeding. The same is true for all other first-stage postconviction petitions, which may be summarily dismissed only if they have 'no arguable basis either in law or in fact.' [Citation.]" *Tate*, 2012 IL 112214, ¶ 20.

¶ 42 The verified petition contains *no* argument or legal authority addressing the "substantial showing" standard at second-stage postconviction proceedings. The State's argument that "the petition's reliance on first-stage case law" does not render it inapplicable because "such citations were used to contextualize the remanded advance to second-stage standards, emphasizing the need for an evidentiary hearing" is unpersuasive. The verified petition did not seek to "contextualize" any second-stage standards because the verified petition did not state any second-stage standards. Further, the verified petition does not address any issues of forfeiture. Making "necessary amendments to the *pro se* petition" "includes making amendments that are necessary to overcome procedural bars." *Addison*, 2023 IL 127119, ¶ 21.

> "The doctrines of *res judicata* and forfeiture will be relaxed only if one of the following three circumstances is present: (1) where fundamental fairness so requires; (2) where the forfeiture stems from the ineffective assistance of appellate counsel; or (3) where the facts relating to the claim do not appear on the face of the original appellate record. [Citations.] Where new evidence is relied upon, as in the third circumstance, the evidence must be (1) of such a conclusive character that it will probably change the result upon retrial; (2) material and not merely cumulative; (3) discovered since trial; and (4) of such character that it could not have been discovered prior to trial by the exercise of due diligence. [Citation.]" *People v. Terry*, 2012 IL App (4th) 100205, ¶ 30.

See *People v. Ayala*, 2022 IL App (1st) 192484, ¶ 106 (same).

¶ 43 Although our review is *de novo*, we note that the trial court granted the State's motion to dismiss in part on the ground that some of defendant's claims were waived or unsupported by affidavit. (The verified petition contains only a coincidental explanation for the absence of some

of the missing affidavits. See *supra*, ¶ 33 (5).) Despite the presence of procedural bars to defendant's claims retained counsels made no effort whatsoever to overcome them (including challenging the effectiveness of appellate counsel in apparently agreeing to dismiss defendant's direct appeal) nor sought leave to file an amended verified petition after the State raised them. That is unreasonable assistance. *Addison*, 2023 IL 127119, ¶¶ 25, 27 (citing *Turner*, 187 Ill. 2d at 412-13; *Perkins*, 229 Ill. 2d at 44).

¶ 44 We are cognizant that at the second stage, the question is "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation" and "the court must not engage in fact-finding or credibility determinations but must take as true all well-pleaded facts that are not positively rebutted by the original trial record." *Madison*, 2023 IL App (1st) 221360, ¶ 33. Therefore, the same arguments, citations to the record, and supporting affidavits that were used to argue the trial court erred in summarily dismissing the petition (which were never reached by this court) could be used to support the argument that the petition should advance to a third-stage evidentiary hearing. We also recognize that the verified petition states that this court granted the agreed motion for summary disposition and remanded the matter for second-stage proceedings, and asked for a third-stage evidentiary hearing. We also concede that the verified petition does contain fortuitous statements consistent with second stage proceedings: "[t]he *unrebutted* factual claim that underpins all of the claims in [defendant's] post-conviction petition is that he was not guilty of shooting Tinisha Webster, but was defending himself from Tinisha when the gun discharged;"] "[*t*]*aking these unrebutted allegations as true*, Tinisha's actions justified [defendant's] use of force to protect himself."

¶ 45    However, the verified petition also contains the following passages which aptly demonstrate that despite the existence of some coincidental language relating to the proper standard, retained counsels failed to argue or apply second-stage law in the verified petition:

"Thus to the extent the affidavits of Xavier Cox, Anthony Williams[,] Sherry Brownlee, and [defendant's father] contain hearsay, they were proper because affidavits containing hearsay may be attached *in support of pro se post-conviction petitions*. [Citation.] In fact, these affidavits do what affidavits are intended to do *at this stage* of post-conviction proceedings: they assert facts *unrebutted at trial* which show that [defendant's] allegation that the [*sic*] threatened his life, *is capable of objective corroboration*, and identify the sources, character, and availability of that evidence." (Emphases added.)

"It is well established that the circuit court is not permitted to make credibility assessments at the *first stage* of post-conviction proceedings. [Citation.] Rather, all well-pled facts in the petition are taken to be true unless positively rebutted by the record. To the extent family bias might arise in the testimony of Mr. Cox or [defendant's father,] that is a matter reserved for the third-stage post-conviction evidentiary hearing. [Citation.] The contents of these affidavits are not *positively rebutted* by evidence in the record because they allege facts that were not raised at trial—which is the essence of [defendant's] claim that defense counsel provided ineffective assistance by failing to call Tinisha to testify." (Emphases added.)

¶ 46    In sum, the verified petition *may* have allowed the trial court to make a proper second-stage determination in spite of retained counsels' repeated use of first-stage argumentation

(because they copied it from a first-stage appellate brief). The State's motion to dismiss did assert that defendant "fails to allege a substantial constitutional violation" and the trial court's order does find that defendant failed to establish prejudice or that his trial counsels' performance fell below professional standards, and "[t]here is no demonstration of a substantial deprivation of a constitutional right. Therefore, the State's motion to dismiss the post-conviction petition at second stage is granted."

¶ 47    Nonetheless, it is clear that retained counsels did not amend the petition into proper legal from to adequately present defendant's claims because the proper legal form would have been to argue that the petition and supporting evidence make a "substantial showing" of defendant's claims, not that defendant's claims are arguable. *Tate*, 2012 IL 112214, ¶ 20. The "proper legal form" must include recognizing the procedural posture of the petition. See *Addison*, 2023 IL 127119, ¶ 21 (citing *Perkins*, 229 Ill. 2d at 44 (discussing our supreme court's construction of "amendments 'necessary for an adequate presentation of petitioner's contentions' " in context of the purposes and prior interpretations of Rule 651(c))). Therefore, we find that defendant has "clearly rebutted the presumption of reasonable assistance" both because retained counsels failed to amend the *pro se* petition into proper legal form to adequately present defendant's claims at the second stage of postconviction proceedings and because the record clearly rebuts the presumption that retained counsels reviewed the record for purposes of amending the petition. *People v. Johnson*, 154 Ill. 2d 227, 243 (1993) (Rule 651(c) "requires the record on appeal to show that counsel made any amendments to the *pro se* petition which were 'necessary for an adequate presentation of petitioner's contentions.' "); *Addison*, 2023 IL 127119, ¶ 34; see *Wills*, 2018 IL App (4th) 170385-U, ¶ 21.

¶ 48    Whether or not the trial court could interpret counsels' deficient pleadings properly is irrelevant. To hold otherwise would subject counsels' failure to comply with Rule 651(c) to a harmless error analysis. This court recently recognized:

> "[O]ur supreme court has recently held that 'harmless error analysis does not apply where compliance with Rule 651(c) is not shown and that such compliance must be shown regardless of whether the claims made in the petition are viable.' *Addison*, 2023 IL 127119, ¶ 35; see *People v. Suarez*, 224 Ill. 2d 37, 47 (2007) (holding that when postconviction counsel fails to fulfill her duties under Rule 651(c), remand is required 'regardless of whether the claims raised in the petition had merit'; explaining that the 'purpose' underlying the rule 'is not merely formal,' but 'to ensure that all indigents are provided proper representation when presenting claims of constitutional deprivation' (internal quotation marks omitted))." *Madison*, 2023 IL App (1st) 221360, ¶ 48.

¶ 49    Where the record rebuts the presumption that postconviction counsel complied with Rule 651(c), remand is required for new second stage proceedings in compliance with the rule. *Madison*, 2023 IL App (1st) 221360, ¶ 49; *Addison*, 2023 IL 127119, ¶ 41 (citing *Turner*, 187 Ill. 2d at 416 ("This court will not speculate whether the trial court would have dismissed the petition without an evidentiary hearing if counsel had adequately performed his duties under Rule 651(c)."). "Because counsel did not comply with Rule 651(c), our case law dictates that the cause should be remanded without a consideration of whether the petition's claims have merit." *Addison*, 2023 IL 127119, ¶ 33.

¶ 50                                CONCLUSION

¶ 51    For the foregoing reasons, the judgment of the circuit court of Cook County is reversed,

and the cause is remanded for further proceedings.

¶ 52    Reversed and remanded.