NOTICE
Decision filed 09/24/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220752-U

NO. 5-22-0752

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 16-CF-470 |
| | ) | |
| STEVEN A. WILLIAMS, | ) | Honorable |
| | ) | Kyle A. Napp, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Justices Cates and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: Postconviction counsel provided the defendant with unreasonable assistance when he failed to attach to the postconviction petition an affidavit or other evidence to support the claim of ineffective assistance of trial counsel, and therefore the circuit court's summary dismissal of the postconviction petition is reversed, and this cause is remanded for second-stage postconviction proceedings.

¶ 2    A jury found the defendant, Steven A. Williams, guilty of five counts of aggravated battery to a child, and the circuit court sentenced him to imprisonment for an aggregate term of 30 years. On direct appeal, this court affirmed the judgment of conviction. *People v. Williams*, 2020 IL App (5th) 170447-U. Subsequently, the defendant filed, by and through private postconviction counsel, a petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2022)). In the petition, his sole claim was that trial counsel had provided ineffective assistance when she failed to call, at the defendant's trial, an expert witness to counter the testimony of a

1

pediatrician who had testified for the State. The circuit court entered an order that summarily dismissed the petition as frivolous and patently without merit. The defendant now appeals from that summary dismissal, arguing that his postconviction counsel had failed to provide reasonable assistance by not attaching to the postconviction petition an affidavit from the expert, or other sufficient evidence to support the claim. For the reasons set forth below, this court reverses the circuit court's summary dismissal and remands this cause for further proceedings.

¶ 3                                    BACKGROUND

¶ 4      In 2016, the defendant was charged by indictment with five counts of aggravated battery to a child, a Class X felony. See 720 ILCS 5/12-3.05(b)(1), (h) (West 2016). In each of these five counts, the victim was S.W., the defendant's 14-month-old son. Each of the five counts was based on a different injury that was suffered by S.W.

¶ 5      In September 2017, the cause proceeded to a trial by jury. The defendant was represented by private trial counsel. Nine witnesses—four police officers and five civilians—testified for the State. None of them saw the defendant abuse S.W. in any way. The witnesses included S.W.'s mother, who was the defendant's girlfriend, and two of the mother's sisters, *i.e.*, two of S.W.'s maternal aunts. These three, plus the boyfriend of one of the aunts, provided much of the testimony relating to S.W.'s apparently normal and healthy condition in the few hours prior to his being found severely injured, while in the care of the defendant alone. S.W. was rushed to a local hospital and hence was airlifted to Cardinal Glennon Children's Hospital in St. Louis.

¶ 6      Another witness, Dr. Linda Shaw, provided crucial medical testimony at the defendant's trial. Dr. Shaw was an associate professor of pediatrics at St. Louis University Medical School and was board certified in child abuse pediatrics. She testified that on February 23, 2016, S.W. was brought to the emergency room of Cardinal Glennon Children's Hospital. She was asked to

2

evaluate S.W. for child abuse. She found that S.W. had been abused. Relying on the findings of medical colleagues, including a radiologist and an ophthalmologist, and on various scans and other diagnostic tools, Dr. Shaw found that S.W. had an injury to the head, which included blood around the brain and the tissues surrounding the brain. S.W. was bleeding at the back of both eyes, in "the area called the retina." The soft tissues of S.W.'s neck were injured, and there was swelling of the ligaments at the tip of the neck. Three ribs on his left side and two ribs on his right were fractured. The fractures on the left were older, by about a week, than the ones on the right. Dr. Shaw further testified that bruises on S.W.'s thorax were a cause for concern because that area was not typically bruised accidentally, as the chin, knees, etc., typically are. There was a laceration, or cut, to the liver. In short, S.W. had been badly injured, she testified. "Abuse was suspected because there was no significant accident presented to explain this configuration of injuries," Dr. Shaw stated. The injuries covered "multiple areas of the body." These injuries typically could be caused by a "significant automobile collision," or a fall of "several flights from a high building," or by violently shaking the child, but would not be caused by simple, accidental falls around a home. Because of damage to the brain tissue, S.W. was having trouble breathing normally, Dr. Shaw stated, and therefore he was intubated. Due to pressure on the brain, a portion of S.W.'s skull had to be removed.

¶ 7     The defense called three witnesses at the defendant's trial, including the defendant himself. The defendant testified that in the days prior to S.W.'s hospitalization, S.W. had fallen more than once at home. After stopping by S.W.'s aunt's apartment in order to pick up S.W., the defendant noticed that S.W.'s eyes had rolled to the back of his head. S.W. was unresponsive and the defendant quickly became alarmed. The defendant admitted that S.W.'s injuries were very serious,

3

but he was at a loss as to how to explain them. "I don't know what happened to my baby," the defendant stated.

¶ 8    In her closing argument, defense counsel stated, "We don't know what happened to the baby." Counsel suggested to the jury that the police did not do enough to figure out what had happened to S.W., and the police too quickly blamed the defendant due to their own prejudices.

¶ 9    The jury found the defendant guilty on all five counts.

¶ 10    In November 2017, the court sentenced the defendant to imprisonment for a term of six years on each of the five counts. The sentences were to be served consecutively, for an aggregate sentence of 30 years.

¶ 11    The defendant appealed to this court from the judgment of conviction. This court affirmed. *People v. Williams*, 2020 IL App (5th) 170447-U.

¶ 12    After the defendant lost his direct appeal, he filed a petition for leave to appeal in the Illinois Supreme Court. On January 27, 2021, leave to appeal was denied. *People v. Williams*, No. 126683. The defendant did not file a petition for a writ of *certiorari* with the United States Supreme Court.

¶ 13    On August 17, 2021, the defendant filed a *pro se* motion for extension of time to file a postconviction petition, wherein he sought "a three month extension." On October 8, 2021, the court entered a written order that stated, in its entirety, "Motion for extension of time granted. Clerk to send copies."

¶ 14    On July 2, 2022, the defendant, by and through a different private attorney, mailed to the clerk of the circuit court a petition for relief under the Post-Conviction Hearing Act. See 725 ILCS 5/122-1 *et seq* (West 2022). The petition was filed-stamped July 8, 2022. The petition raised only one claim: that the defendant's trial attorney had provided ineffective assistance when she failed to call an expert witness to counter the opinions of the State's witness, Dr. Linda Shaw, regarding

4

S.W.'s injuries. According to the defendant, he was in jail during the time that his attorney was preparing for trial, and therefore his attorney dealt with the defendant's mother, Linda Holley, on matters relating to the defendant's case. In July 2017, the attorney telephoned Holley and stated that, in her opinion, it was essential to hire a medical expert to independently review the pertinent medical records and police reports in order to counter the conclusions of Dr. Shaw. The attorney asked Holley for money to hire such an expert. Holley provided the requested money and was given a receipt. At trial, though, the attorney did not call a medical expert. Furthermore, the attorney never offered the defendant any explanation as to why an expert had not been called. In conclusion, the petition stated that if the trial attorney had called an expert witness to offer the jury an alternative explanation for the child's injuries, or at least to call into question Dr. Shaw's opinions, there was a reasonable probability that the result of the trial would have been different.

¶ 15    Attached to the postconviction petition was the defendant's verification affidavit. Also attached were two pieces of evidence in support of the postconviction claim: (1) an affidavit from the defendant's mother, Linda Holley, and (2) a receipt. In her affidavit, Holley stated that during the months leading up to the defendant's trial, she was in frequent contact with the defendant's trial attorney and made payments to the attorney. In July 2017, the attorney asked Holley to provide "funds to be paid to secure the services and testimony of an expert witness that she had consulted with on [the defendant's] case." In response, Holley went to the attorney's office, paid her $2000, and received a receipt that specifically noted that the payment was for an expert witness. Finally, Holley wrote in her affidavit that the attorney never explained why an expert was not called to testify on the defendant's behalf. The second piece of evidence attached to the petition was a copy of a receipt for $2000, which specified that the money was for "medical expert fees."

5

¶ 16      Significantly, a key piece of evidence was not attached to the postconviction petition—an affidavit from the medical expert with whom trial counsel had consulted but whom counsel had not called to testify. Also, the petition did not state why the affidavit, or other evidence, was not attached thereto. See 725 ILCS 5/122-2 (West 2022) ("Contents of Petition").

¶ 17      The circuit court entered a written order that summarily dismissed the postconviction petition as frivolous and patently without merit. The court found that the defendant's claim of ineffective assistance of counsel did not meet either prong of the two-pronged analysis laid out in *Strickland v. Washington*, 466 U.S. 688 (1984). First, the attorney's not calling a medical expert to testify at trial was not objectively unreasonable but was a matter of trial strategy. After all, the attorney was defending the defendant on the basis of who caused the injuries to S.W., not on the basis of the nature of the injuries. Second, none of the facts alleged in the postconviction petition or its supporting documents created a reasonable probability that calling an expert witness would have altered the trial's outcome. As to this second prong, the court elaborated that in order to support the claim that a medical expert was needed to counter the testimony of the State's witnesses, the defendant "needed to supply an affidavit from an expert explaining the significance of their testimony and how the potential testimony might have brought about a different result." The court noted that "[b]ald, conclusory statements without facts of how a medical expert would have contradicted the state's witnesses is [*sic*] insufficient to show ineffective assistance of counsel."

¶ 18      The defendant filed a notice of appeal from the summary-dismissal order.

¶ 19                                        ANALYSIS

¶ 20      Through private postconviction counsel, the defendant filed a postconviction petition wherein he claimed that private trial counsel had provided ineffective assistance when she failed

6

to call an expert medical witness to counter the testimony of Dr. Linda Shaw, the pediatrician who had testified on the State's behalf regarding her evaluation of S.W.'s injuries and their implications. Postconviction counsel did not attach to the postconviction petition the expert witness's affidavit, or other evidence, showing what the expert's testimony would have been and how that testimony, potentially, would have altered the outcome of the defendant's trial. The circuit court summarily dismissed the postconviction petition due to the absence of such an affidavit or other evidence. In the instant appeal, the defendant argues that postconviction counsel, by failing to attach that affidavit or other evidence, provided the defendant with unreasonable assistance. This court agrees with the defendant. As a result of postconviction counsel's unreasonable assistance, the summary-dismissal order is reversed, and this cause is remanded for further proceedings.

¶ 21    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) provides a procedural mechanism through which an incarcerated criminal defendant may assert that his criminal conviction was the result of a substantial violation of his federal or state constitutional rights. *Id.* § 122-1(a)(1). That is, the Act provides a system through which a defendant can raise constitutional claims about his trial or sentencing that were not, and could not have been, raised on direct appeal. *People v. Allen*, 2015 IL 113135, ¶ 20; see also *People v. Flores*, 153 Ill. 2d 264, 277 (1992) (the purpose of the Act is to permit inquiry into the constitutional issues involved in the proceedings that resulted in conviction).

¶ 22    There are up to three stages in a postconviction proceeding. *People v. Pendleton*, 223 Ill. 2d 458, 471-72 (2006). At the first stage, the defendant files a petition, verified by his affidavit, with the clerk of the circuit court in which the conviction was entered. 725 ILCS 5/122-1(b) (West 2022). Timing requirements apply to the filing of a petition. See *id.* § 122-1(c). Especially

7

important in the instant case is the following provision of the Act: "The petition shall *** clearly set forth the respects in which [the defendant's] constitutional rights were violated. The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." *Id.* § 122-2; *People v. Collins*, 202 Ill. 2d 59, 65 (2002) (if the supporting affidavits, etc., are unavailable, "the petition must explain why"). "A claim that trial counsel failed to investigate and call a witness must be supported by an affidavit from the proposed witness." *People v. Enis*, 194 Ill. 2d 361, 380 (2000). Absent such an affidavit, "a reviewing court cannot determine whether the proposed witness could have provided testimony or information favorable to the defendant, and further review of the claim is unnecessary." *Id.* The purpose of requiring evidence to be attached to the petition is to show that the petition's verified allegations are "capable of objective or independent corroboration." *Collins*, 202 Ill. 2d at 67

¶ 23    The Act requires the circuit court to examine a defendant's postconviction petition, and enter an order thereon, within 90 days after the petition is filed and docketed. 725 ILCS 5/122-2.1(a) (West 2022). A circuit court needs to determine within the 90-day timeframe whether it should summarily dismiss the defendant's petition as "frivolous" or "patently without merit" (*id.* § 122-2.1(a)(2)) or should order the petition to be docketed for further consideration (*id.* § 122-2.1(b)). The court makes this determination by independently examining the petition, without input from the State. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996).

¶ 24    A postconviction petition may be dismissed as frivolous or patently without merit if (and only if) its well-pleaded allegations and those in its supporting affidavits—taken as true unless affirmatively rebutted by the record, and liberally construed in the defendant's favor—fail to state the gist of a constitutional claim. *People v. Robinson*, 2020 IL 123849, ¶ 45; *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). That is, the petition may be summarily dismissed "only if [it] has no

8

arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* "An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *Id.* "Fanciful factual allegations include those which are fantastic or delusional." *Id.* at 17.

¶ 25 Where a postconviction petition is summarily dismissed at the first stage of a proceeding, this court reviews that summary dismissal *de novo*. *People v. Hatter*, 2021 IL 125981, ¶ 22.

¶ 26 If the petition clears this "low threshold," it survives the first stage of the postconviction proceeding. *People v. Jones*, 211 Ill. 2d 140, 144 (2004). The petition is docketed for further consideration (see 725 ILCS 122-2.1(b) (West 2022)), and the second stage of the proceeding begins. At the second stage, the State makes its debut in the proceeding. The State may choose to file a motion to dismiss the petition (see *id.* § 122-5), perhaps on the grounds that the petition was untimely filed after the deadline fixed by the Act. See *People v. Lander*, 215 Ill. 2d 577, 584 (2005); 725 ILCS 5/122-1(c) (West 2022). As at the first stage, all well-pleaded facts in the petition that are not positively rebutted by the trial record are taken as true; the circuit court does not engage in any fact-finding or credibility determinations. *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). To survive dismissal at the second stage, the petition must make a substantial showing of a constitutional violation. If it fails to make such a substantial showing, it must be dismissed. *Edwards*, 197 Ill. 2d at 246. If the petition survives the second stage, it enters the third stage, where the circuit court conducts an evidentiary hearing, at which it receives evidence, including oral testimony, and determines whether the defendant is entitled to postconviction relief. See 725 ILCS 5/122-6 (West 2022); *People v. Reed*, 2020 IL 124940, ¶ 51.

¶ 27　A defendant is not constitutionally entitled to the effective assistance of counsel at a postconviction proceeding. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *People v. Johnson*, 154 Ill. 2d 227, 237 (1993). However, the Act entitles him to a "reasonable" level of assistance from counsel. *Flores*, 153 Ill. 2d at 276. The requirement that counsel, whether appointed or private, provide the defendant with reasonable assistance applies during all three stages of the postconviction proceeding. *People v. Johnson*, 2018 IL 122227, ¶ 18. For example, when a defendant hires a private attorney to present his constitutional claims at the first stage, the reasonable-assistance requirement applies. *Id.* ¶ 23. "Post-conviction counsel ha[s] an obligation to present the defendant's post-conviction claims to the court in appropriate legal form." *Johnson*, 154 Ill. 2d at 245. "At a minimum, counsel ha[s] an obligation to attempt to obtain evidentiary support for claims raised in the post-conviction petition." *Id.* The reasonable-assistance requirement serves the purpose of the Act. *Johnson*, 2018 IL 122227, ¶ 18. Postconviction counsel's role is "to insure that if the petitioner has any constitutional claims of merit they will be properly recognized, developed and articulated in the post-conviction proceedings." *People v. King*, 39 Ill. 2d 295, 297 (1968).

¶ 28　Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) was promulgated to "assure the reasonable assistance required by the Act." *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). Indeed, Rule 651(c) has been described as "merely a vehicle for ensuring a reasonable level of assistance." *People v. Anguiano*, 2013 IL App (1st) 113458, ¶ 37. By its own terms, Rule 651(c) limits its application to postconviction counsel who has been appointed after the first stage. *People v. Cotto*, 2016 IL 119006, ¶ 41. However, as noted *supra*, the reasonable level of assistance is a standard that applies to all postconviction counsel, whether appointed or private, and at any of the three stages of the proceeding. See *Johnson*, 2018 IL 122227, ¶ 18. Rule 651(c) imposes certain

specified duties on appointed postconviction counsel, one of which is to make "any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). If counsel fails to comply with Rule 651(c), the defendant is not required to show that he was prejudiced by counsel's failure to comply. *People v. Nitz*, 2011 IL App 2d 100031, ¶ 18.

¶ 29    Turning to the instant case, it is presumed that the defendant's postconviction counsel acted in good faith when he claimed in the postconviction petition that the defendant's trial attorney was ineffective when she failed to call an expert witness to counter the medical testimony of Dr. Linda Shaw, a State's witness. A postconviction petition is a pleading. *People v. Pace*, 386 Ill. App. 3d 1056, 1060 (2008). By signing a pleading, an attorney certifies that he has read the pleading, and that to the best of his knowledge and belief, the pleading "is well grounded in fact" and is warranted by law. Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018). An attorney cannot include a claim in a postconviction petition unless he determines that the claim has merit. See *People v. Greer*, 212 Ill. 2d 192, 205 (2004) ("An attorney *** who determines that defendant's claims are meritless cannot in good faith file an amended [postconviction] petition on behalf of defendant."). Accordingly, the defendant's postconviction counsel, by signing the postconviction petition, certified that the petition was well grounded in fact.

¶ 30    Once the defendant's postconviction counsel had determined that the petition was well grounded, he was required to support the petition's claim with sufficient evidence, or to explain the absence of such evidence. See *Collins*, 202 Ill. 2d at 66-67. Although postconviction counsel did supply an affidavit from the defendant's mother and a receipt for "medical expert fees," he should have supplied—in the words of the circuit court's summary-dismissal order—"an affidavit from an expert explaining the significance of their testimony and how the potential testimony

11

might have brought about a different result." Evidence other than an affidavit, such as a document prepared by the expert in anticipation of trial, also would have sufficed. See 725 ILCS 5/122-2 (West 2022) ("The petition shall have attached thereto affidavits, records, or other evidence supporting the allegations or shall state why the same are not attached."); see also *People v. Dupree*, 2018 IL 122307, ¶ 32 ("Nowhere does the language of the statute [*i.e.*, of section 122-2 of the Act] limit a postconviction petitioner to the use of affidavits to advance a claim of ineffective assistance of counsel or, for that matter, any alleged constitutional deprivation raised in a postconviction petition. The only requirement is that the supporting evidence sufficiently demonstrate the alleged constitutional deprivation.").

¶ 31     Here, though, the defendant's postconviction counsel did not supply sufficient evidence to support the postconviction claim. For example, there was no affidavit from the expert whom trial counsel had consulted but then failed to call as a witness at trial. At a minimum, postconviction counsel should have explained why he did not supply sufficient evidence to support the claim. However, he offered no such explanation.

¶ 32     Postconviction counsel unreasonably assisted the defendant when he failed to support his ineffective-assistance claim with sufficient evidence, or to explain the absence of such evidence. The order summarily dismissing the petition must be reversed.

¶ 33     In its brief, the State argues that the summary dismissal cannot be reversed unless the defendant shows that he was prejudiced by postconviction counsel's unreasonable assistance. For this point, the State relies on *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 59, wherein the appellate court held that a "*Strickland*-like analysis" will be applied when private postconviction counsel is accused of unreasonable assistance at the first stage of a postconviction proceeding. However, as the defendant argues in his brief, *Zareski* has been effectively overruled by *Johnson*,

2018 IL 122227. In *Johnson*, the supreme court stated that if postconviction counsel has already determined that a claim has merit, and therefore has included that claim in his postconviction petition, but counsel then fails to support this claim with sufficient evidence, or to explain its absence, the Act cannot serve its function of providing incarcerated defendants with a mechanism for vindicating their constitutional rights. *Id.* ¶ 17. If an attorney's deficient performance results in the loss of a meritorious constitutional claim at the very start (*i.e.*, at the first stage) of a postconviction proceeding, the loss will likely be permanent, and a defendant will be deprived of his liberty in violation of his constitutional rights. It is error to dismiss a postconviction petition on the pleadings where there has been inadequate representation by counsel. No showing of prejudice is needed here.

¶ 34                                    CONCLUSION

¶ 35    For the foregoing reasons, the judgment summarily dismissing the defendant's postconviction petition is reversed. This cause is remanded to the circuit court for second-stage postconviction proceedings, where postconviction counsel will be able to supply evidence in support of the petition's claim, or to explain its absence.

¶ 36    Reversed and remanded.