2026 IL App (1st) 241499-U

FIRST DIVISION
June 8, 2026

No. 1-24-1499

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Respondent-Appellee, | ) | Circuit Court of |
| | ) | Cook County, Criminal |
| v. | ) | Division. |
| | ) | |
| MARCUS BELL, | ) | No. 2013 CR 1860401 |
| | ) | |
| Petitioner-Appellant. | ) | Honorable |
| | ) | Jennifer F. Coleman, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Cobbs concurred in the judgment.

**O R D E R**

¶ 1    *Held*:    The circuit court's second-stage dismissal of the petitioner's postconviction petition is reversed and the cause is remanded for second stage proceedings where postconviction counsel rendered unreasonable assistance by failing to present the petitioner's ineffective assistance of trial counsel claim in proper legal form.

¶ 2    After a bench trial in the circuit court of Cook County, the petitioner, Marcus Bell, was convicted of attempt first degree murder and sentenced to 30 years' imprisonment. The petitioner

now appeals from the second-stage dismissal of his postconviction petition filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). He contends that his petition should have been advanced to the third stage of postconviction proceedings because he made a substantial showing of ineffective assistance of trial counsel for counsel's failure: (1) to file a motion to suppress; and (2) to call an expert witness to testify regarding the unreliability of the identification testimony of the State's sole eyewitness. In the alternative, the petitioner argues that his postconviction counsel rendered unreasonable assistance for failing to attach an affidavit and/or report from such an expert witness to support his ineffective assistance of trial counsel claim and seeks remand for further second stage proceedings. For the following reasons, because we find that postconviction counsel rendered unreasonable representation, we reverse and remand for further second stage proceedings under the Act.

¶ 3                          I. BACKGROUND

¶ 4     The instant matter arises from the July 18, 2013, shooting near the intersection of 69th Street and King Drive in Chicago, during which the victim, Henry Williams, was injured. After his arrest on August 30, 2013, the petitioner was charged with four counts of attempt first degree murder (720 ILCS 5/8-4(a) (West 2012))[1] and one count of aggravated battery (with the discharge of a firearm) (720 ILCS 5/12-3.05(e)(1) (West 2012)).

¶ 5     Over two years later, the petitioner proceeded with a bench trial.[2] The State's evidence against the petitioner consisted solely of eyewitness testimony from the victim, Williams. Specifically, Williams testified that on the afternoon of July 18, 2013, he was standing inside the

---

[1]The attempt first degree murder charges were predicated on the petitioner shooting the victim about the body with a firearm (count I), and causing great bodily harm (count II), permanent disability (count III), and permanent disfigurement (count IV).

[2] While the petitioner's bench trial began in November 2015, because of various continuances, the defense did not begin its case-in-chief, and the court did not reach its verdict, until October 2016.

doorway of a flower shop smoking a cigarette he had just purchased at the mini mart next door when he heard two gunshots coming from his left. As Williams stepped outside to see what was happening, he saw "a figure" with "long dreads," wearing "red" clothing and "blue jeans." The "figure" ran towards Williams repeatedly shooting at him. Williams grabbed his hip and fell to the ground, sliding toward the curb and almost under a white truck. Williams made an in-court identification of the petitioner as the shooter. When asked whether he was able to clearly see the petitioner's face during the shooting, Williams stated, "not really," and indicated that he just "saw his figure." Williams then clarified that he saw the petitioner's face only "after the petitioner ran past" him. Williams also stated that nothing obstructed his view at that time. At trial, Williams also claimed that during the shooting, he saw a black and brown .357-caliber revolver in the petitioner's hand.

¶ 6 After the shooting, Williams stumbled into the mini mart to get help.[3] Williams testified that he was in a lot of pain and eventually fainted. After being transported to the hospital, Williams learned that he had been shot six times. The injuries required three rods and a metal plate to be affixed to his hip. Williams claimed that, at the time of trial, he still had nightmares about the shooting in which he saw "this dude's face."

¶ 7 Williams further testified that over six weeks after the shooting, on August 30, 2013, he met with detectives at the police station and identified the petitioner, whom he did not know prior to the shooting, from a line-up. Throughout his testimony, on direct and cross-examination, however, Williams repeatedly maintained that the lineup photograph introduced as State's Exhibit 23 for identification purposes was not the lineup that he viewed on August 30, 2013, and from

---

[3] Williams' interactions with the employees of the minimart were recorded by security footage from inside that store, and that footage was played during his testimony. The footage, however, does not depict the shooting or the petitioner.

which he selected the petitioner. Accordingly, and contrary to the petitioner's contention on appeal, this exhibit was not entered into evidence at the close of trial.

¶ 8     On cross-examination, Williams could not remember whether he spoke to any police detectives at the scene of the crime or at the hospital but recalled speaking with a detective in August when it was "cold outside." He subsequently testified that he did not remember speaking to a detective in August 2013, but only when it was cold. Williams next acknowledged speaking to Assistant State's Attorney (ASA) Jack Costello[4] the day he viewed the lineup. Initially, Williams could not recall whether his statement to ASA Costello was memorialized, but subsequently testified that it was reduced to writing, that he reviewed and corrected it, and that in it, he stated that the shooter was wearing "red clothing" and "blue jeans" and had "long dreads."

¶ 9     Apart from Williams' account, the remainder of the State's evidence against the petitioner consisted of a stipulation that the petitioner was arrested on August 30, 2013, and testimony from Chicago police evidence technician Patrick Doyle, who processed the crime scene. Doyle testified that he recovered two bullet fragments from the mini mart's floor, which were never tested because no gun was ever found, but that he "believed" the firearm used was a revolver because no shell casings were recovered.

¶ 10    After the State rested, defense counsel first moved to dismiss the indictment based on prosecutorial misconduct. The court denied the State's petition to strike that motion as untimely but subsequently denied the motion itself. Defense counsel then filed a motion for a directed finding arguing that Williams' identification of the petitioner was unreliable and that the State had

---

[4] We note that a prior order in this case incorrectly referred to the ASA as Jack Castillo. See *People v. Bell*, 2019 IL App (1st) 170982-U, ¶¶ 7, 10. However, the record before us reflects that the ASA's name is Jack Costello, and we will therefore now refer to him as such.

failed to prove his guilt beyond a reasonable doubt.

¶ 11    After the trial court denied that motion, defense counsel proceeded solely by way of a stipulation. Specifically, the parties stipulated that if called to testify, Chicago Police Detective Abner Rodriguez would state that he was present on August 30, 2013, when Williams gave a statement to ASA Costello, and that during that statement, Williams never said that: (1) he almost slid under a white truck; (2) he saw a .357-caliber black and brown firearm in the shooter's hand; and (3) the shooter was wearing a "red shirt, jeans and had long dreads."

¶ 12    After the parties' closing arguments, the trial court found the petitioner guilty of all five counts. In pronouncing the petitioner's guilt, the court noted that it "paid particular attention to the testimony concerning the identification" of the petitioner as the shooter and noted that Williams identified the petitioner both from a lineup and in court. The court acknowledged that Williams' detailed description of the shooter's appearance at trial was not part of his statement to the police and that Williams admitted that during the shooting, he initially only saw the shooter's figure. The court, however, found relevant that Williams testified that he clearly saw the shooter's face as the shooter moved passed him and that he subsequently continued to have nightmares about him. In the court's assessment, Williams was credible and "not impeached."

¶ 13    In his posttrial motion, the petitioner, *inter alia*, challenged the reliability of Williams' identification. Specifically, during the posttrial hearing, defense counsel argued that Williams' opportunity to observe and correctly identify the petitioner was severely diminished by the "trauma" of hearing gunshots and having to evade his assailant by running and sliding under a vehicle. Defense counsel also asserted that, at trial, Williams testified to "more descriptive things" than were included in his written statement to police. Additionally, defense counsel pointed out that even though Williams claimed to continue to have nightmares about the shooting, when

describing the shooter, he had failed to mention the petitioner's "very unique and distinguishable" face tattoos. In response to this last comment, the trial court responded that in looking at the petitioner, it did not clearly see any face tattoos but, rather, only "barely" a "mark" on the petitioner's face.

¶ 14    The court then rejected the petitioner's contention that Williams was an unreliable witness. The court explained that there was "no formula about how long somebody had to look at another person after having been shot." The court also noted that defense counsel had conducted a "very exact cross-examination" of Williams, and that Williams was not "impeached in any material way whatsoever concerning the situation." The petitioner was subsequently sentenced to an aggregate of 31 years' imprisonment.[5]

¶ 15    On direct appeal, the petitioner argued that: (1) the State failed to prove him guilty beyond a reasonable doubt because Williams' testimony was unreliable and contradictory, and (2) his attempt first degree murder sentence violated the one-act, one-crime rule. Another panel of this court affirmed the petitioner's convictions, finding that a rational trier of fact could have found beyond a reasonable doubt that the petitioner was the shooter based solely on Williams' testimony, which we found to be reliable under *Neil v. Biggers*, 409 U.S. 188 (1972). *People v. Bell*, 2019 IL App (1st) 170982-U, ¶ 17. In doing so, the court rejected the petitioner's attempts for the first time on appeal to rely on scientific research suggesting that the presence of firearms and high levels of stress increase the likelihood of misidentifications because that research had not been presented to or considered by the trial court in rendering a guilty verdict. *Id*. at ¶ 22. Finding that the petitioner's sentence violated the one-act, one-crime rule, however, the court remanded the matter to the trial

---

[5]Specifically, the petitioner was sentenced to: two terms of 30 years' imprisonment for attempt first degree murder (under counts I and II), two terms of 31 years' imprisonment for attempt first degree murder (under counts III and IV), and one term of 30 years' imprisonment for aggravated battery with the discharge of a firearm, with all of the sentences to be served concurrently.

judge to enter a sentence solely on the most serious attempt first degree murder count. See *People v. Bell*, 2019 IL App (1st) 170982-U. On remand, the trial court imposed a sentence of 30 years' imprisonment.

¶ 16    On October 4, 2022, the petitioner, represented by private counsel, filed the instant postconviction petition. Therein, the petitioner alleged ineffective assistance of his trial counsel based on counsel's failure to file a motion to suppress Williams' unreliable identification. In discussing the *Biggers* factors, the petitioner asserted that by failing to file such a motion, trial counsel "failed to introduce research studies and expert testimony" which would have "undercut the reliability of the identification." In support, the petitioner attached the following medical journal- and law review- articles discussing misidentifications: (1) Morgan III, et. al, *Accuracy of Eyewitness Memory for Persons Encountered During Exposure to Highly Intense Stress,* 27 International Journal of Law and Psychiatry 265, 275-276 (2004); (2) Kenneth A. Deffenbacher, *et al., A Meta-Analytic Review of the Effects of High Stress on Eyewitness Memory,* 28 Law and Human Behavior 687, 689 (2004); (3) Elizabeth F. Loftus, *et al., Some Facts about "Weapon Focus,"* 11 Law and Human Behavior, 55, 55 (1987); (4) Connie Mayer, *Due Process Challenges to eyewitness Identification Based on Pretrial Photographic Arrays,* 13 Pace Law Review 815, 849-50 (1994). Briefly summarized, these articles propose, *inter alia*, that high levels of stress in violent situations, and the presence of a weapon, which leads to weapon's focus, diminish an eyewitness' ability to make accurate identifications and recall crime-related details.

¶ 17    On the same day, postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) attesting that he had consulted with the petitioner, reviewed the trial court file and report of proceedings and made the necessary amendments to the petition for the "adequate

presentation" of any defects in those proceedings.

¶ 18    On March 2, 2023, the State filed a motion to dismiss the postconviction petition. Therein, the State asserted, *inter alia*, that the petitioner had failed to establish trial counsel's ineffectiveness because any motion to suppress would not have been successful, and even if successful, it would not have changed the result of the trial where Williams made an in-court identification of the petitioner as the shooter.

¶ 19    On March 12, 2024, the petitioner, again represented by private counsel, filed an amended postconviction petition, adding a claim that trial counsel was ineffective for failing to introduce the testimony of an expert witness at trial regarding the reliability of Williams' identification. The petitioner asserted that this case "screamed for expert testimony" regarding the "unreliability and fallibility" of Williams' identification testimony because there was no physical evidence linking him to the crime, and he never confessed. Instead, the State's case was premised solely on Williams' testimony, which had already been impeached by his prior statements to the police. According to the petitioner, under this record, there was no strategic reason whatsoever that could explain counsel's failure to investigate or attempt to introduce an expert eyewitness at his trial. Moreover, under these particular facts, there was a reasonable probability that introducing such evidence would have resulted in a different outcome.

¶ 20    In support of his amended petition, the petitioner attached no documentation and instead merely cited the articles previously provided in support of his original pleading. The State did not file a motion to dismiss the amended petition.

¶ 21    The parties proceeded with a hearing at which the court considered both claims of ineffective assistance of trial counsel. On July 13, 2024, the court granted the State's motion to

dismiss on the merits. The petitioner now appeals.

¶ 22                                  II. ANALYSIS

¶ 23    On appeal, the petitioner argues that dismissal was improper because he made a substantial showing of trial counsel's ineffectiveness for failing: (1) to file a motion to suppress arguing that Williams' identification was not reliable; and (2) to call an expert witness to testify regarding the unreliability of that identification. In the alternative, the petitioner asserts that he was denied his right to reasonable assistance of postconviction counsel where counsel failed, *inter alia*, to attach an affidavit or report from an expert witness, as such evidentiary support was essential to making a substantial showing of trial counsel's ineffectiveness on this basis.

¶ 24    Because we find the petitioner's claim regarding postconviction counsel's representation dispositive, we address it first.

¶ 25    The Act provides a three-stage process by which criminal defendants can challenge their convictions based on a substantial denial of federal or state constitutional rights. See 725 ILCS 5/122-1 *et seq.* (West 2020); *People v. Johnson*, 2017 IL 120310, ¶ 14; *People v. Cotto*, 2016 IL 119006, ¶ 26; *People v. Tate*, 2012 IL 112214, ¶ 8; *People v. Hodges*, 234 Ill. 2d 1, 9 (2009); *People v. Peeples*, 205 Ill. 2d 480, 509 (2002). At the first stage of the proceedings, within the first 90 days, the circuit court must independently review the petition and determine whether the allegations therein, taken as true, demonstrate a constitutional violation or whether they are frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2020); *Cotto*, 2016 IL 119006, ¶ 26; *Tate*, 2012 IL 112214, ¶ 9.

¶ 26    If, as here, the circuit court does not dismiss the petition at the first stage, the petition advances to the second stage, where counsel is appointed for indigent defendants and the State may file responsive pleadings. 725 ILCS 122-2.1(a)(2), (b), 122-4, 122-5 (West 2020); *Cotto*, 2016

IL 119006, ¶ 27; *Tate*, 2012 IL 112214, ¶ 10. At the second stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. 725 ILCS 5/122-6 (West 2020); *Tate*, 2012 IL 112214, ¶ 10. In doing so, the court must not engage in fact-finding or credibility determinations but must take as true all well-pleaded facts that are not positively rebutted by the original trial record. *People v. Domagala*, 2013 IL 113688, ¶ 35. If the circuit court determines that the petitioner has made a substantial showing of a constitutional violation, the petition proceeds to the third stage for an evidentiary hearing. *People v. Simms*, 2021 IL App (1st) 161067-B, ¶ 35. Conversely, where no substantial showing is made, the petition is dismissed. *Id*.

¶ 27 The right to counsel in postconviction proceedings is not constitutionally guaranteed but stems solely from the Act. *Cotto*, 2016 IL 119006, ¶ 28; see also *People v. Addison*, 2023 IL 127119, ¶ 19. However, according to our supreme court, the Act entitles petitioners to a "reasonable" level of assistance at all stages of the postconviction proceedings. *People v. Williams*, 2025 IL 129718, ¶ 43; *Cotto*, 2016 IL 119006, ¶ 28. Reasonableness is generally established by compliance with Illinois Supreme Court Rule 651(c), which requires postconviction counsel to consult with the petitioner, examine the record of the trial proceedings, and make amendments to the petition necessary to advance the petitioner's claims. Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 28 While the filing of a compliant Rule 651(c) certificate generally creates a rebuttable presumption that counsel provided reasonable assistance (*People v. Smith*, 2022 IL 126940, ¶ 29), Rule 651(c) applies only when the petition that initiates the proceeding is filed *pro se*. See *People v. Johnson*, 2018 IL 122227, ¶ 18 (Rule 651(c) "applies only to those defendants who file their initial petition *pro se* and who are [represented by] counsel at the second stage"); *Cotto*, 2016 IL 119006, ¶ 41; *People v. Perkins*, 229 Ill. 2d 34, 44 (2007) (the purpose of Rule 651(c) is to ensure

that counsel shapes the petitioner's *pro se* claims into proper legal form and presents those claims to the court). Where, as here, privately retained counsel drafts the petition that initiates the proceedings, obviating the application of Rule 651(c), our courts have applied a "*Strickland*-like analysis" in evaluating the "reasonableness" of postconviction counsel's performance. See *People v. Zareski*, 2017 IL App (1st) 150836, ¶¶ 58-61; *People v. Perez*, 2023 IL App (4th) 220280, ¶¶ 41-54. Under this analysis, the petitioner must show both some level of deficient performance by postconviction counsel and prejudice stemming from that performance, *i.e.*, that there "is a reasonable probability that, but for counsel's errors, the result of the [postconviction] proceeding would have been different." *People v. Ayala*, 2022 IL App (1st) 192484, ¶ 162; see also *People v. Boone*, 2023 IL App (1st) 220433-U, ¶ 57 (citing *Zareski*, 2017 IL App (1st) 150836, ¶¶ 51, 59); *People v. Rosado*, 2023 IL App (1st) 220706-U, ¶ 20; see also *People v. Cherry*, 2016 IL 118728, ¶ 30 (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)) (Pursuant to *Strickland*, to prevail on a claim of ineffective assistance of counsel a defendant must demonstrate both that counsel's performance was objectively unreasonable and that there is a reasonable probability that but for counsel's deficient performance the outcome of the proceeding would have been different.); but see *People v. Williams*, 2024 IL App (5th) 220752-U, ¶ 33 (finding that *Zareski*'s requirement that a petitioner show prejudice stemming from postconviction counsel's conduct "has been effectively overruled"). Whether counsel has provided a reasonable level of assistance necessarily depends on the unique facts of each case, which we review *de novo*. *Williams*, 2025 IL 129718, ¶ 43; *People v. Madison*, 2023 IL App (1st) 221360, ¶ 35.

¶ 29     In the present case, for the following reasons, we find that postconviction counsel's failure to attach an affidavit or report from an expert witness supporting the petitioner's claim regarding trial counsel's failure to investigate and call such a witness constituted deficient representation,

which prejudiced the outcome of the petitioner's postconviction proceeding.

¶ 30     It is undeniable that postconviction counsel acted unreasonably by providing virtually no evidentiary support for this claim. "Post-conviction counsel ha[s] an obligation to present the defendant's post-conviction claims to the court in appropriate legal form." *Johnson*, 154 Ill. 2d at 245. Because " '[t]he second stage of postconviction review tests the legal sufficiency of the petition' " (*People v. Dixon*, 2018 IL App (3d) 150630, ¶ 12 (quoting *Domagala*, 2013 IL 113688, ¶ 35)), the allegations in the petition must contain a sufficient factual basis for each claim and the claim must be supported by affidavits, records or other evidence, or otherwise explain their absence. 725 ILCS 5/122-2 (West 2020); see also *People v. Dupree*, 2018 IL 122307, ¶ 29 *Johnson*, 154 Ill. 2d at 239; *Dixon*, 2018 IL App (3d) 150630, ¶ 20. Where "a postconviction petitioner raises a claim of ineffective assistance of counsel based on counsel's failure to call a witness," our supreme court has held that "an affidavit from the proposed witness will be required if it is essential for the postconviction petitioner to make the necessary 'substantial showing' to support a claim of ineffective assistance." *Dupree*, 2018 IL 122307, ¶ 34. When the court assesses whether the allegations in the petition make a substantial showing of a constitutional violation, all well-pleaded facts and affidavits are taken as true, but nonfactual and nonspecific assertions that merely amount to conclusions are not sufficient to require an evidentiary hearing. *Dixon*, 2018 IL App (3d) 150630, ¶ 20 (citing *People v. Rissley*, 206 Ill. 2d 403, 412 (2003)); see also *People v. Marbley*, 2016 IL App (1st) 141359, ¶ 19.

¶ 31     Here, postconviction counsel argued that trial counsel was ineffective for failing to call an eyewitness identification expert as a witness to challenge the reliability of Williams' identification. An affidavit or report from an expert witness was therefore necessary to properly present this claim. In its absence, the petitioner could not make a substantial showing of counsel's

ineffectiveness because the circuit court could not determine what a proposed expert's testimony would have been or whether and to what extent that testimony would have been favorable to the petitioner. *People v. Enis,* 194 Ill. 2d 361, 380 (200) (citing *People v. Johnson*, 183 Ill. 2d 176, 192 (1998) (Without an affidavit from a proposed witness, "a reviewing court cannot determine whether the proposed witness could have provided testimony or information favorable to the defendant"); *People v. Thompkins*, 161 Ill. 2d 148, 163 (1994) (same). While postconviction counsel cited to articles regarding the impact of high stress and weapons' focus on eyewitness misidentification, those articles nowhere discussed the particular facts of this case, nor provided any insight into what an expert in this field would have concluded regarding Williams' identification or whether and how that testimony could have changed the outcome of the petitioner's trial. As such, counsel failed to allege any specific facts necessary to assert, let alone make a substantial showing, of trial counsel's ineffectiveness on this basis. In this vacuum, "there was virtually nothing for the circuit court to take as true at the second stage." *Dixon*, 2018 IL App (3d) 150630, ¶ 20. Accordingly, the claim was not presented in the proper legal form, and postconviction counsel's conduct was unreasonable. *Id.*

¶ 32    To the extent that the State argues that postconviction counsel was not required to obtain such a report or affidavit because the petitioner "could in no way compel [Williams] to sit with an expert for an interview in order to provide a basis for the evaluation of his identification," we strongly disagree. Expert reports regarding eyewitness identifications are commonly based upon an expert's evaluation of the trial record and proceedings, and by no means involve experts locating and directly interviewing eyewitnesses. See *e.g.*, *People v. Timothy Malone*, 2025 IL App (1st) 241491-U, ¶¶ 47-55.

¶ 33    Turning to the prejudice prong, we find that there was a reasonable probability that, had

postconviction counsel supported the petitioner's claim with an expert witness report, the outcome of the postconviction proceeding would have been different.

¶ 34 In that respect, we find our supreme court's decision *People v. Lerma*, 2016 IL 118496 instructive. In that case, our supreme court held that research regarding eyewitness identifications was "well settled, well supported" and where "relevant and appropriate" a "perfectly proper subject for expert testimony." *Id.* ¶ 24. Our supreme court identified several factors to be used in assessing the appropriateness of admitting such expert testimony at trial, including: (1) the importance of the eyewitness identifications to the State's case; (2) whether the factors identified by the expert as undermining the reliability of eyewitness identifications were present in the case; (3) whether the eyewitnesses were available for cross-examination; and (4) the eyewitnesses' prior familiarity with the suspect. *Id.* ¶ 26; see also *People v. Ortiz*, 2017 IL App (1st) 142559, ¶ 33. Noting, that the State's case relied "100% on the reliability of the eyewitness identifications," one eyewitness could not be cross-examined, and the other had minimal familiarity with the defendant prior to the shooting, the court in *Lerma* ultimately concluded that there was "no question" that this was "the type of case for which eyewitness testimony [wa]s both relevant and appropriate." *Lerma*, 2016 118496, ¶ 26. The court therefore held that it was an abuse of discretion not to admit the expert testimony at the defendant's trial. *Id.* ¶¶ 25-26.

¶ 35 Pursuant to *Lerma*, we find no strategic reason for trial counsel's failure to investigate and introduce expert testimony regarding eyewitness identification at the petitioner's trial. There was no physical evidence linking the petitioner to the crime, the petitioner made no admissions or incriminating statements, and the State's sole evidence of guilt came from a single eyewitness, who had no familiarity with the petitioner, and whose identification had already been significantly impeached by his prior lack of descriptions of the shooter to the police. As such, testimony from

an eyewitness identification expert discrediting the reliability of that sole identification was essential to the defense case and certainly had the potential to change the outcome of the petitioner's trial, such that trial counsel's failure to introduce it amounted to ineffective assistance. See *People v. Hayes*, 2022 IL App (1st) 190881-B, ¶¶ 34-37 (holding that where the State's case entirely hinged on eyewitness identification trial "counsel should have investigated and sought admission of an expert witness on eyewitness identification.").[6]

¶ 36    The State's reliance on *People v. Elliott*, 2025 IL App (1st) 241180, ¶ 45, to the contrary, is misplaced. In that case, the State's evidence against the defendant consisted of: (1) eyewitness testimony from three witnesses, one of whom was familiar with the defendant and identified him to police immediately after the shooting, and another who selected the defendant from a lineup only a week later and subsequently identified a photograph of that lineup at the defendant's trial; (2) forensic evidence showing that the shots were fired by a .40 caliber weapon; and (3) numerous self-incriminating text messages by the defendant showing, *inter alia*, that leading up to the crime, he was inquiring about the victim's gang loyalty and trying to obtain "40 shells," and that, after the shooting, he was " 'stashed' in a little room due to an 'emergency,' " with "it on [him]" but that "the Royal [was] down" and that "we Royal killa." *Id*. ¶¶ 4-20.

¶ 37    On these facts, the *Elliott* court rejected the defendant's argument on direct appeal that trial counsel was ineffective for failing to introduce an eyewitness identification expert to challenge the

---

[6] While not cited by either party, we are cognizant that in *People v. Bridges*, 2025 IL App (1st) 241180, another panel of this appellate court recently held that a defendant could not establish that trial counsel acted unreasonably by failing to call an eyewitness identification expert at his trial because *Lerma* had not yet been decided and "the prevailing caselaw" at the time "generally precluded" the use of such experts. *Id*. ¶ 32. We find *Bridges* inapplicable here because, as already noted above, defense counsel did not begin his case-in-chief in the petitioner's trial until October 2016, nine months after our supreme court issued its decision in *Lerma*.

reliability of the eyewitness unfamiliar with the defendant prior to the shooting. *Id.* ¶ 50. The court held that even though calling such an expert "may have made the defendant's case stronger," failing to do so was not "*per se* ineffective assistance" so long as counsel "subject[ed] the State's case to meaningful adversarial testing." *Id.* ¶¶ 37, 46. Because, there, the State's case "did not rely '100%' on eyewitness identification," and multiple eyewitnesses identified the defendant as the shooter, the court found that counsel could have reasonably concluded that introducing testimony from an expert witness to discredit one eyewitness would have invited the State to call its own expert to bolster the credibility of the others. *Id.* ¶ 45.

¶ 38    The same cannot be said here, where the State's case against the petitioner rested solely on the testimony of a single eyewitness, who did not know the petitioner prior to the shooting, did not describe him in any detail to police after the crime, and only identified him 43 days later from a lineup, a photograph of which was never introduced at trial. Under this record, we believe that the only way to subject the State's case to any meaningful adversarial testing would have been to introduce testimony from an eyewitness identification expert to challenge the reliability of that sole identification. A trial strategy without this meaningful adversarial testing is wholly unreasonable.

¶ 39    Moreover, contrary to the State's position, we find that *Elliott* actually supports our conclusion that the petitioner was prejudiced by postconviction counsel's failure to attach a report or affidavit from such an expert to support his claim of ineffective assistance of trial counsel on this basis. In finding that the defendant could not establish prejudice arising from trial counsel's failure to call an eyewitness identification expert at his trial, the *Elliott* court found, *inter alia*, that without a proffer from such an expert, any arguments regarding the substance and impact of that expert's potential testimony were merely speculative and therefore insufficient to establish a

16

reasonable probability of a different trial outcome. See *Id*. ¶ 49 ("[A]s no expert testimony was proffered, such testimony is necessarily speculative." See *People v. Johnson*, 2021 IL 126291, ¶ 58 ("speculation as to what an expert would say is insufficient to establish prejudice.")). Accordingly, *Elliott* holds that to establish prejudice from trial counsel's failure to call an eyewitness identification expert, it is imperative to show what that testimony would have been in relation to the defendant's case.

¶ 40    Here, by failing to attach an affidavit or report from an expert witness discussing the reliability of Williams' identification under the facts of this case, postconviction counsel failed to provide any evidence to support the petitioner's claim that he was prejudiced by trial counsel's failure to call such an expert witness at his trial. Therefore, under the holding of *Elliott*, the circuit court was obligated to conclude that any arguments made regarding the potential for a different trial outcome stemming from trial counsel's failure to call such a witness were speculative and justified dismissal of the claim on the merits. Accordingly, there can be no doubt that postconviction counsel's omission prejudiced the outcome of the petitioner's postconviction proceeding.

¶ 41    Because we conclude that postconviction counsel rendered unreasonable assistance by failing to support the petitioner's claim with an affidavit or report from an expert witness, we reverse and remand for further second stage proceedings, so that the petitioner is given an opportunity to support his claim with the appropriate evidence.

¶ 42                                    III. CONCLUSION

¶ 43    For these reasons, we reverse the circuit court's order and remand the matter to the circuit

court for further second-stage proceedings under the Act.

¶ 44    Reversed and remanded.